MARSHALL & ANTLES, Appellants, v. KANSAS CITY,
FORT SCOTT & MEMPHIS RAILWAY COMPANY,
Respondent.

Kansas City Court of Appeals, March 7, 1898.

Common Carriers: CONSTRUCTION OF CONTRACT: LIABILITY BEYOND
LINE: STATUTE. A bill of lading was blank as to the point it was
agreed to transport the goods, though their destination was beyond
the receiving carrier's line. It further stipulated for the nonliability
of the carrier beyond its line. *Held*, a proper construction was an
agreement to ship beyond its line, as this interpretation tends to
effectuate the evident purpose of the statute forbidding limitation of
the receiving carrier's liability beyond its own lines.

*Appeal from the Jasper Circuit Court.*—HON. JOS. D.
PERKINS, Judge.

REVERSED AND REMANDED.

CUNNINGHAM & DOLAN for appellants.

(1) All the evidence in the case proves the con-
tract on part of respondent to transport appellants'
corn to Little Rock, and that the agent of respondent's
road at Joplin, Missouri, had authority to make such
a contract. And having made such a contract, re-
spondent, in same contract, can not limit its liability
to the terminus of its own line. R. S. 1889, sec. 944;
McCann v. Eddy, 133 Mo. 59. (2) The issuance of a
receipt or bill of lading for property to be carried to a
point beyond the terminus of the road of the carrier

VOL. 74 app—6

is under the statute *prima facie* evidence of a contract by such carrier to carry the property to the place of its destination. McCann v. Eddy, 133 Mo. 67; Dimmitt v. R'y, 103 Mo. 433.

WALLACE PRATT, I. P. DANA and CHARLES W. BLAIR for respondent.

(1) The bill of lading is binding upon the parties in the absence of fraud or mistake. O'Bryan v. Kinney, 74 Mo. 125; R'y v. Cleary, 77 Mo. 634. (2) The bill of lading only binds us to carry over our line, as far as it goes in the direction of the final destination of the property, and limits our liability for said property to our own line. See bill of lading in testimony. Minter Bros. v. R. R., 56 Mo. App. 282. (3) There could be no liability on the respondent in this case, unless it had agreed expressly to carry the corn to Little Rock. Dimmitt v. R. R., 103 Mo. 433; Nines v. R. R., 107 Mo. 475; Patterson v. R. R., 56 Mo. App. 657. (4) And this the trial court specifically decided, as a matter of fact, that we did not do. Wilson v. Express Co., 43 Mo. App. 659.

ELLISON, J.—Plaintiff charges defendant with converting a car load of corn. The conversion consisted in a connecting carrier making delivery at the point of destination.

The facts necessary to determine the case are these: Plaintiff delivered to defendant, at Joplin, Missouri, a car load of corn for shipment to Little Rock, Arkansas. Defendant's line of road does not reach Little Rock, the nearest point being Jonesborough where it connects with another line running to Little Rock. The freight was paid to defendant to Little Rock and defendant exe-

cuted a bill of lading for the grain, containing the following provisions:

KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY.

No. ———.    JOPLIN, MO., Station, 8—5, 1895.

*Received*, from Marshall & Antles, in apparent good order by the Kansas City, Fort Scott & Memphis Railroad Company, the following described packages (contents & value unknown, except as given by shipper below), marked and numbered as per margin, subject to the conditions and regulations of the published tariff of said Company, to be transported over the line of this railway to ——— and delivered, after payment of freight and advanced charges, in like good order to the consignee or party in whose care they are consigned, or a connecting carrier (if the same are to be forwarded beyond the line of this company's road), to be carried to the place of destination; it being expressly agreed that the responsibility of this company shall not extend beyond its own line, and that it shall not be liable for any loss, damage or injury to said property caused by the negligence of any other common carrier, railroad or transportation company, to which said property may be delivered or over whose line it may pass.    *    *    *

| Remarks and Consignee. | No.Pkgs. | Discription of Articles. | Said to Weigh. |
|---|---|---|---|
| S. O. Notify... ......... | ....... .. | Car Corn................ | 33,375. |
| Little Rock Grain Co..... | .... .. | H. C. Conley, Agt ...... | ......... |
| Little Rock............. | ......... | .. ............ .. | ......... |
| Ark ............... .... | ......... | Frt. Paid...... ... .... | ......... |
| ............... .... | ....... | K. C. F. S. & M.......... | ......... |
| ... ............. ...... | ....... | 2194............ .... | ......... |

It was the connecting line at Little Rock which committed the wrong of which complaint is made.

The question for decision is whether defendant is liable for the wrong of the connecting carrier. The decision of the question involves the construction of section 944, Revised Statutes 1889. In recently passing on a case involving the same statute we said: "We understand the cases of Dimmitt v. R'y, 103 Mo. 433, and McCann v. Eddy, 133 Mo. 59, to decide that under the statute of 1889, section 944, a carrier receiving freight destined beyond its own line may stipulate that it will not be liable for negligence of the connecting carrier if its contract of carriage is limited to the end of its own route. But if the receiving carrier's contract is to transport the freight to point of destination, it can not so limit its liability, and must answer for the negligence of the connecting carrier. Those cases further hold that the receiving carrier in receiving freight and issuing a bill of lading therefor to a point beyond its own line *prima facie* agrees to carry to such point, and to prevent such construction of the contract, it will be necessary that it stipulate it is only to carry to the end of its own line." Bank v. R'y, 72 Mo. App. 82.

In this case, it will be seen by the portion of the bill of lading above quoted that there is no stipulation as to what point the grain was to be shipped, no point being named. But in the case just cited it is said that a receiving carrier receiving and issuing a bill of lading for freight destined to a point beyond its own line *prima facie* agrees to carry to such point, unless such carrier stipulate that it is only to carry to the end of its own line. There being no such stipulation made in this case, it follows that, unless controlled by a portion of the agreement which is invoked by defendant, it must be held to have contracted to carry to Little Rock. The part of the contract just referred to is the provision that defendant would not be liable for loss or

*Margin note: COMMON carriers: construction of contract: liability beyond line.*

damage beyond its own line.　In the Eddy case, *supra*, at page 68, it is said that:　Where the terms of the contract are in doubt such an agreement might be evidence that it was the intention of the parties for the receiving carrier to only carry to the end of its own line.　We therefore have in this case a contract of carriage with the point of shipment left blank, but with a point of destination beyond the defendant's line.　And on the other hand containing a provision that defendant should not be liable for loss occurring beyond its own line.　The act of receiving the grain destined, as stated on the bill of lading, for Little Rock evinces an intention to carry to Little Rock.　The stipulation not to be liable for damages occurring beyond its own line evinces an intention (when considered alone) not to carry beyond its own line.　In our opinion the act of receiving the freight destined as stated ought to govern. Several reasons might be suggested to support this conclusion; but an all sufficient one is that it tends to effectuate the *evident purpose* of the statute.　The statute, as construed in the case above referred to, makes the receiving carrier liable for damage or loss occasioned by the connecting carrier unless there is a stipulation that the shipment is only over the receiving carriers' own road.　This stipulation should be made to appear.　The most that could be said here is that, taking together the two matters above set forth, one favoring plaintiffs' and the other defendant's construction, one offsets the other in their tendency to show contrary intentions.　This would leave the contract not containing a stipulation to carry only on defendant's own line.

It follows that the trial court erred in the view taken of the contract between the parties and the judgment will be reversed and the cause remanded. All concur.