WARD v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, November 12, 1900.

1. **Contract of Shipment:** UNIFORM CHARGES: INTERSTATE COMMERCE ACT: DISCRIMINATION PROHIBITED. A contract entered into between a shipper of freight and a railroad company, provided that in consideration of a reduced rate of freight, the valuation of the property shipped should not exceed a certain sum per hundred pounds, and that if the same should be lost or destroyed while in transit or before delivery to the consignee, the company would be liable only for such sum per hundred pounds. *Held*, that such contract is void, being a violation of the provisions of the Interstate Commerce Law, which prohibits unjust discrimination, and requires all transportation companies to fix and make all tariff charges equal for like services rendered under substantially similar conditions.

2. ————: VALUATION OF GOODS: ASSESSMENT OF DAMAGES: INSTRUC-
TION. Although the bill of lading recited that a rate of tariff less
than the regular rate was granted and agreed upon, and that in con-
sideration of such tariff reduction, the valuation of the goods shipped
should not exceed a certain named sum, yet no such fact was shown
to have existed; on the contrary, the evidence showed that no dis-
crimination was made, and that plaintiff was in fact charged the
regular tariff rate as published in the schedule of charges required
at the hands of the railroad company. *Held*, that an instruction
was properly given which told the jury that they should disregard
the limitation valuation agreement in the bill of lading, and should
assess plaintiff's damages at the actual value of the goods at the
point of shipment.

3. ————: CLAIMS FOR DAMAGES: REPORT OF LIABILITY. A provision
in a contract of shipment that all claims for damages growing out
of the shipment and transportation of property should be reported
by the consignee, in writing, within 36 hours after he had been no-
tified of the arrival of the freight at the place of delivery, is not in
contravention of public policy. The courts have upheld such limi-
tations on the liabilities of transportation companies in this State,
but they must be reasonable and justly construed in their applica-
tions to the particular facts of each particular case. Such limita-
tions do not relieve the common carrier of its just responsibility, or
of its common law liabilities for negligence; and where neglect of
the claimant in reporting loss or damage works no harm to the
carrier, then the consideration for the required notice is wanting,
and the carrier can not complain of its non-observance.

4. ————: ————: NO DELIVERY: NOTICE. Where the freight for the
loss of which damages is claimed, has never arrived at its place of
delivery, written notice of the claim is not required. When a rail-
road company seeks to defeat its common law liability as a public
carrier by invoking a special contract, it must show a violation of
both the spirit and letter of such contract.

Appeal from Jackson Circuit Court.—*Hon. C. L. Hobson,*
Judge.

AFFIRMED.

*Elijah Robinson* and *Lee B. Ewing* for appellant.

(1) Defendant's demurrer to the evidence should have
been sustained. The clause in the bill of lading requiring

notice was not complied with and the court should have directed a verdict for the defendant. Rice v. Railroad, 63 Mo. 314; Harned v. Railroad, 51 Mo. App. 482; Sprague v. Railroad, 34 Kan. 347; Railroad v. Koch, 47 Kan. 753; Greenwood on Public Policy, rule 455, p. 517. (2) The court committed error in giving plaintiff's instructions numbered 2 and 3, and in refusing defendant's instructions numbered 4 and 5. The limitation valuation clause in the bill of lading, under which these goods were shipped, was valid and binding, and the court should have so instructed the jury. Express Co. v. Foley, 46 Kan. 457; Railroad v. Simpson, 30 Kan. 645; Harvey v. Railroad, 74 Mo. 538; McFadden v. Railroad, 92 Mo. 343; Squire v. Railroad, 98 Mass. 239; Graves v. Railroad, 137 Mass. 33; Hart v. Railroad, 112 U. S. 331; Duncan v. Railroad, 4th Inters. Com. Rep. 385; Inters. Com. Com. v. Railroad, 145 U. S. 263.

*Edward J. Massie* and *Yeager & Strother* for respondent.

(1) No notice in writing of the loss of the box sued for was required by the bill of lading. Wilson v. Railroad, 23 Mo. App. 50; Leonard v. Railroad, 54 Mo. App. 293. (2) Even if it be held that notice was required in the case at bar, still the notice given was sufficient. Rice v. Railroad, 63 Mo. 314; Hess v. Railroad, 40 Mo. App. 202; Harned v. Railroad, 51 Mo. App. 482; Richardson v. Railroad, 62 Mo. App. 1. (3) The evidence shows that as a matter of fact no reduced rate was given. The agreement fixing the value of goods in case of loss or damage was therefore without consideration, and void. McFadden v. Railroad, 92 Mo. 343; Kellermann v. Railroad (Mo.), 34 S. W. Rep. 41. (4) The shipment in question is interstate commerce and governed by the interstate commerce law and its amendments. Any reduction

of freight rates would, therefore, have been illegal and void; and a contract based on an illegal consideration is void.   24 U. S. Stat. at Large, 379; Supplement to U. S. Rev. Stat. (2 Ed.), 529; 25 U. S. Stat. at Large, 855; Sup. to U. S. Rev. Stat. (2 Ed.), 684.

ROBINSON, J.—On September 18, 1895, the plaintiff shipped from Pittsburg, Kansas, to Kansas City, Mo., over the line of defendant's railroad, a lot of household furniture and three boxes of household goods and notions.   One of these boxes plaintiff never received, and to recover the damages occasioned thereby this suit was begun.   At the trial plaintiff recovered a judgment for $300, and defendant, after the usual preliminaries to that end, took the case on appeal to the Kansas City Court of Appeals.   When the case came up for hearing in that court, it was ordered transferred to this, for the reason, as expressed in said order, "that said cause involves the construction of the Interstate Commerce Law, as appears by said respondent's instruction numbered 3, and the briefs of counsel."

Defendant filed an answer setting up a contract of shipment, wherein it was agreed between plaintiff and defendant that in consideration of reduced rate of freight, the valuation of said property shipped should not exceed the sum of five dollars per hundred pounds, and that if the same should be lost or destroyed while in transit or before delivery to the consignee, the defendant would be 'liable only for the sum of five dollars per hundred pounds.   The answer further alleged that said property named in plaintiff's petition and therein charged to have been lost by defendant, did not weigh more than 200 pounds.   It is further alleged, that by the terms of said contract of shipment the consignor of said property stipulated and agreed, "that all claims for damages growing out of the shipment and transportation of said prop-

erty should be reported by the consignee in writing, to the delivering line within 36 hours after the consignee had been notified of the arrival of the freight at the place of delivery," and this plaintiff had failed to do.

Plaintiff by way of reply, stated that in the bill of lading sued on, there did appear a limitation valuation clause, but that notwithstanding that fact, "the tariff rate actually charged and collected by the defendant for said shipment was in truth and in fact according to the regular published schedule of rates and charges established by the defendant and in force at the time of said shipment, and that the rate so charged was not in fact any reduction from the regular schedule rate from Pittsburg, Kansas, to Kansas City, Mo., and that any rate defendant may purport to have which is greater or less than the schedule rate is unlawful and void, and in violation of an act of Congress to regulate commerce; and further states that the provisions of said bill of lading purporting to limit the valuation of the property therein described and herein sued for was and is unlawful, without consideration and void, and in violation of the Interstate Commerce Law in such cases made and provided."

I. Appellant's chief assignment of error is, the action of the trial court in giving to the jury an instruction in behalf of plaintiff to the effect that in assessing plaintiff's damages, they would disregard the limitation valuation agreement in the bill of lading issued by the defendant company, and that their verdict should be for such amount as they may believe from the evidence was the actual value of the goods sued for, at the point of shipment, not exceeding the sum named in plaintiff's petition.

Whether the court in giving instruction numbered 3, complained of by appellant, thought the limitation valuation clause in the bill of lading, based upon a rate of tariff less than the regular rate, void, because in contravention of the

Interstate Commerce Act; or whether from all the testimony, it determined that, notwithstanding the recitation in the bill of lading, no reduced charge or tariff rate, was in fact given to plaintiff (and hence no consideration for the promise to accept a value less than the true one for the property shipped, in the event of its loss or damage) there is nothing appearing of record to indicate. For either reason the court's action might properly be sustained. If we look solely to the face of the bill of lading itself, unaided by outside testimony, clearly it must appear as a shipping contract, prohibited by the Interstate Commerce Act. The clause in question reads as follows:

"In consideration of the rate of tariff, which is less than the regular rate from Pittsburg, Kansas, to Kansas City, Mo., being granted, and agreed upon, to apply to the shipment herein described, consisting of the articles described below, consigned by G. E. McKim to F. W. Ward, it is hereby agreed by the undersigned, in whose favor the contract is executed, that the valuation of my said goods above described shall not exceed five dollars per hundred pounds, and if the same are lost or damaged while in transit, or before delivery is effected to consignee, and said Mo. Pac. Co., or any other line over which the said goods may be carried under this contract, shall be legally liable for such loss or damage, the amount of value claimed therefor shall not exceed the sum of five dollars per hundred pounds."

· That the chief and essential aim of the Interstate Commerce Act was to require equality and uniformity in all transportation charges to all persons for similar service, shipping from one State to another, and to prevent unreasonable and undue preferences to persons, corporations or localities, by way of special or reduced rates, is most manifest.

By sections 2 and 3 of said act it is provided:

"Sec. 2. That if any common carrier subject to the

provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." [24 U. S. Statutes at Large, 379.]

By section 6 of an act to amend in part said original act of February 4, 1887, passed March 2, 1889, it is provided:

"Sec. 6. That every common carrier subject to the provisions of this act shall print and keep open to public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. The schedules printed as aforesaid by any common carrier shall plainly state the places upon its railroad between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately the terminal charges and any

rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates and fares and charges. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be posted in two public and conspicuous places, in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected. . . . . . . .

"No advance shall be made in the rates, fares, and charges which have been established and published as aforesaid by any common carrier in compliance with the requirements of this section, except after ten days' public notice, which shall plainly state the changes proposed to be made in the schedule then in force, and the time when the increased rates, fares, or charges will go into effect; and the proposed changes shall be shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection. Reductions in such published rates, fares, or charges shall only be made after three days' previous public notice, to be given in the same manner that notice of an advance in rates must be given.

And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such published schedule of rates, fares, and charges as may at the time be in force." . . . . . . . [25 U. S. Statutes at Large, 855.]

If these acts mean anything, clearly it is that all transportation companies are peremptorily required to fix and

make all tariff charges equal for like services rendered under substantially similar conditions. If there is but one rate or charge permissible for one class of freight under the act in question, then such a thing as a rate "less than the regular rate" is prohibited, and defendant ought not to be permitted to plead the violation of law as a defense to liabilities incurred in the line of its duty as a common carrier under the law. To say that the rate established by the bill of lading ("less than the regular rate") was made in consideration that plaintiff placed a reduced valuation upon the property shipped, does not put the contract of shipment without the prohibition of the act, but simply illustrates how by the mere subterfuge of a reduced valuation clause, inserted in shipping contracts, classes innumerable might be established, and the whole scheme of uniformity in charge contemplated in the Interstate Commerce Act be nullified. If the simple suggestion of a diminished valuation of a designated article or class of property to be shipped would work for it a new rate in the schedule of charges required to be printed or hung up to public view in the depot or station house of the transportation company, the provision of the law forbidding reductions as well as advances in the rate charges, except after public notice, would mean nothing, and new schedules arranged, and classes formed, to suit every special friend of the company, or favored locality applying for transportation rates, would be the rule and practice as before the enactment of the law.

The Interstate Commerce Act was passed to meet and defeat the very evil of "special or reduced rates" pleaded in this case as a defense in part, to defendant's liability. Special contract rates and scheduled rates or rates determinable by definite and published rules can not be reconciled one with the other. A contract is special only as it alters general terms and conditions.

II.   If now we leave the consideration of the question of the effects of the Interstate · Commerce Act upon the contract of shipment as it appears upon its face, and turn to the consideration of the facts of the case, as developed at ·the trial, the action of the court in giving plaintiff's instruction numbered 3, telling the jury to disregard the limitation valuation agreement in the bill of lading, and assess plaintiff's damages at the actual value of the goods sued for, might be upheld upon the further ground that notwithstanding the recitation in the bill of lading of a "rate of tariff, which is less than the regular rate from Pittsburg to Kansas City, Mo., being granted and agreed upon," no such fact was shown to have existed, but on the contrary all the facts showed that no discrimination was made in favor of plaintiff, and that he was charged the regular tariff rate from Pittsburg, Kansas, to Kansas City, Mo., for the kind and character of freight shipped by him, as same was published in the schedule of charges required to be·made by the defendant company.  The mere statement by defendant's station agent that "the goods were·carried·at a less rate than they would have been carried if they had not been released," is not ·a denial of the fact that forty-nine cents per hundred pounds (the rate actually paid for the goods which he did receive) was less than the regular schedule of rate fixed and published by the company for the character of goods shipped by plaintiff from Pittsburg, Kansas, to Kansas ·City, Mo.  In fact, the witness in direct terms, says, that forty-nine cents was the schedule rate indicated between Pittsburg and Kansas City.  A schedule or fixed rate, is a fact, and when given by a witness, he can·not wipe out, destroy or avoid the force of that fact, by telling why or under what circumstances it was established or was sought to be defeated.   It is no denial of the fact of the existence of a forty-nine-cent-per-hundred-pound-rate between Pittsburg and Kansas City, on household goods, of

the kind shipped in this instance, for the station agent of
defendant to say, that in order to get that rate the company
requires all shippers to sign a bill of lading, wherein it is
stipulated that the value of the property shipped does not
exceed five dollars per hundred pounds, and that in case same
is lost in transit or before delivery the company shall not
be liable for more than that sum.   There was really no sub-
stantial testimony upon the issue tendered by defendant, that
the tariff rate given plaintiff was less than the regular or
schedule rate, and for that reason the court might properly
have given plaintiff's instruction numbered 3.   There was
no consideration for the "reduced valuation clause," in the
contract of shipment, and to that extent it was void and
inoperative, and should not have been considered by the
jury.

III.   Appellant also pleaded as a defense to plaintiff's
action, that by the terms of the contract of shipment entered
into between plaintiff and itself, it was stipulated and agreed
that all claims for damages growing out of the shipment and
transportation of plaintiff's property should be reported by
the consignee, in writing, to the delivering line within 36 hours
after the consignee had been notified of the arrival of the
freight at the place of delivery, and that plaintiff did not
make his claim for damages as therein provided.

It being shown at the trial on part of plaintiff, that
written notice of plaintiff's claim of damages was not re-
ported to defendant until September 24, 1895, more than
36 hours after he had been notified of the arrival of his
goods at Kansas City, the court was asked to give an instruc-
tion in the nature of a demurrer to the evidence, which was
refused, and that action of the court appellant now assigns
as error.   The language of the bills of lading as regards
the matter of notice, reads:   "Claims for damages must be
reported by consignee, in writing, to the delivering line

within 36 hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not then given, neither this company nor any of the connecting or intermediate carriers shall be liable." That similar provisions to the above, in shipping contracts, do not of themselves contravene public policy, and that like limitations on the liabilities of transportation companies in this state have been upheld, is unquestioned, but, in all such cases that such provision must be reasonably and justly construed, in their applications to the particular facts and conditions of each particular case is equally as well grounded. It was never intended by these limitations and conditions in the shipper's contract, that the just responsibility of the common carrier should be relieved, or that its common-law liabilities for negligence was to be avoided; but only that the carrier might thereby justly and properly guard itself from imposition and fraud that otherwise might be worked upon it if the agreed precautionary conditions and restrictions are not complied. with. If no harm was done or could have come to the defendant in this instance, by reason of the neglect of the plaintiff (if negligence it could be called) to give the designated notice, within the prescribed time, then the consideration for the required notice is wanting and defendant can not complain of its non-observance.

On September 2, 1895, while the plaintiff was at defendant's depot in Kansas City, making inquiry about his goods, he was informed that they had arrived. A short time afterwards, when he called for the goods, three of the boxes containing household goods, clothing, etc., could not, at first, be found. Search by plaintiff and defendant's agents revealed one of the missing boxes in another part of the freight depot from where the bulk of plaintiff's goods and furniture had been stored. Afterwards plaintiff in company with one of defendant's agents went to the car in which the goods had

been shipped, and there found another box belonging to plaintiff, and also a box of about the same size marked "K. & T. Coal Co.," containing some old books and papers not belonging to plaintiff. The third box claimed by plaintiff was not found, and plaintiff gave oral notice and claim of damages at that time to defendant's agent. A similar notice was given the following Monday, and on Tuesday, the twenty-fourth of September, 1895, a formal written notice of the loss and damages was reported to defendant. It also appears that no objection was made at the time, to the character of the notice given by plaintiff, and that the agent of defendant promised plaintiff that he would look up the box for him, and further that defendant's agents did write to the claim department in St. Louis about the missing box, and sent one of the special claim agents of the company to Pittsburg, Kansas, to investigate the matter from that end of the line. Defendant it seems did all that it could or would have done, had it been formally notified in writing of plaintiff's loss and damages within the designated time. It knew of the missing box by its inability to find and deliver same to plaintiff when he called for his goods. Further notice of its loss would have been a useless formality. Written notice of a claim for damages could have in nowise aided defendant in the matter of making an estimate of the true value of the things lost, or have in any way prevented an over or fraudulent valuation being placed upon the goods by plaintiff.

As the box was lost and never delivered to its place of destination, the reason upon which rested the clause requiring written notice of damages within the prescribed limitation in the bill of lading, lost out with it. As applied to the facts and conditions of this case the clause could have no reasonable or just purpose, and without which defendant can not invoke it to defeat, *in toto*, its liability as a common carrier.

IV. Further, we think it might also be said, in avoid-

ance of defendant's contention, that under a strict interpretation of the language of the contract of shipment, no written notice was required from plaintiff. The "claim for damages that must be reported by the consignee in writing to the delivering line within thirty-six hours," is, "after the consignee has been notified of the arrival of the freight at the place of delivery," which in this case means the box of goods in controversy, and not those which plaintiff received, about which there is no controversy. That particular item of freight has never arrived at Kansas City, its place of delivery, so far as disclosed by the facts in this case, and until that time arrives, plaintiff is not required under the strict terms of the shipment contract to notify defendant of his damages by writing or otherwise. When defendant seeks to defeat its common-law liability as a public carrier by invoking a special contract, as in this case, it must show the existence of both its spirit and letter violated.

The judgment of the circuit court will be affirmed. *Brace, P. J.*, and *Valliant, J.*, concur; *Marshall, J.*, concurs for the reasons expressed in the second, third and fourth paragraphs of the opinion.