BUFFINGTON & LEE, Respondents, v. THE WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 7, 1906.

1. **COMMON CARRIERS: Shipping Contract: Destination.** A shipping contract with the application therefor and the endorsements thereon, is held to be an undertaking to ship from Keytesville, Missouri, to the National Stock Yards, Illinois, and not to the end of the defendant's line.

2. ———: ———: **Negligence: Connecting Carrier.** If the receiving carrier's contract is to transport to the point of destination it cannot limit its liability for the negligence of a connecting carrier; and the receipt of the freight in the issuing of a bill of lading to a destination beyond its own line is *prima facie* an agreement to carry to such point, even though there is no express stipulation to transport to such point; and to prevent such operation of the contract it must stipulate to carry only to the end of its own line.

3. ———: ———: ———: ———: **Statute.** A stipulation in the contract relieving the carrier of responsibility only on its own lines is not sufficient since under the statute the carrier, to secure such relief, must contract to carry to the end of its own line.

4. ———: ———: **Limitation of Value: Measure of Damages.** The contract limited the liability of the carrier to fifty dollars per head for the live stock carried. *Held,* the meaning is that for loss or injury to any one or more of the cattle the damage shall not exceed fifty dollars for each one, and it is of no consequence to the carrier what the shipper may get for his uninjured cattle, since his concern alone is with the injured.

5. ———: ———: **Instructions: Departure.** Certain criticised instructions when fairly and properly considered do not constitute a departure.

Appeal from Chariton Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*George S. Grover* for appellant.

(1) At the close of the case, the learned judge below should have directed a verdict in favor of the defendant. Sash and Door Co. v. Railroad, 177 Mo. 641, and cases there cited; Wyrick v. Railroad, 74 Mo. App. 415; Railroad v. Pearce, 192 U. S. 189. (2) The court gave improper and erroneous instructions at the request of plaintiff. Ely v. Railroad, 77 Mo. 34; DeDonato v. Morrison, 160 Mo. 581; Haworth v. Railroad, 94 Mo. App. 215. (3) The court refused proper instructions

asked by defendant. Authorities cited under point I, supra. (4) The verdict is excessive. Kellerman v. Railroad, 136 Mo. 191; Vaughn v. Railroad, 78 Mo. App. 645; Wyrick v. Railroad, 74 Mo. App. 418.

*Fred Lamb* for respondents.

(1) This property was received by the Wabash Railroad Company, a common carrier, to be transported from Keytesville, Missouri, to National Stock Yards, Illinois. It issued a contract therefor. The property was damaged by the negligence of the Wabash or some carrier to whom it was delivered by the Wabash. All the conditions of the statute are fully met and the Wabash is properly sued in this action. Section 5222, supra, has been construed in many Missouri cases among which are the following: Watkins v. Railroad, 44 Mo. App. 247; Popham v. Barnard, 77 Mo. App. 610; McCann v. Eddy, 133 Mo. 59; Affirmed by U. S. Supreme Court, 174 U. S. 580; Grain Co. v. Railroad, 176 Mo. 480; Sash and Door Co. v. Railroad, 177 Mo. 655. (2) In the second subdivision of his argument counsel complains because of an alleged departure from the pleadings. This was an action for the negligence of the company. The petition counts on a negligent delay and negligent handling of cattle and the damage incident thereto. The instructions taken as a whole fairly present the issues. (3) It is next insisted that because the cattle brought within $87.10 in St. Louis of the value placed on them in the contract, that this is the measure of plaintiff's recovery, and Kelbeman v. Railroad, 136 Mo. 191, is cited in support thereof. The Kelbeman case and the cases there cited only decide that when a contract is fairly entered into and the values agreed upon, the values so named will govern in case of loss of the property. If the total damage for which judgment was rendered, exceeded the total valuation, or if the damage to any particular animal exceeded the amount stated in the application we might concede the correctness of appellants' contention.

In this, however, the judgment was for only a very small part of the valuation and manifestly the exemptions named in the contract have no application here.

ELLISON, J.—The present action was brought by plaintiff to recover damages for an alleged negligent delay in the shipment of forty-seven head of cattle. The judgment in the trial court was for the plaintiffs.

The cattle were shipped under the terms of a written contract and their destination was the National Stock Yards, East St. Louis, Illinois, a point to which defendant's road did not extend. The delay was occasioned by the connecting line and therefore defendant contends it is not liable. The contract is: "The Wabash Railroad Company, party of the first part and Perry Lee (party of second part), Witnesseth: That the party of the first part and connecting lines, will in consideration of the agreement herein contained forward for the party of the second part one man and the following freight, to-wit; forty-seven cattle, each of said cattle weighing 1200 lbs., from Keytesville, Missouri, the responsiblity of each carrier to extend hereunder only to its own line. At the rate of 13 1-4c per cwt. which is a reduced rate expressly agreed upon between the parties hereto, and in consideration of which rate the party of the second part stipulates and agrees as follows," etc.

It will be observed that no destination of shipment is named in the above agreement. But at the head of the paper, preceding the agreement, is the following: "To the Wabash Railroad Company: The undersigned offers for shipment over your railroad, and connecting lines, forty-seven head of cattle from Keytesville to Nat'l St'k Yds. each of the estimated weight of 1200 lbs. and valued at $50 per head and subject to the rules and regulations of the company and of the schedule of valuations and weights printed on the back hereof; such valuations being named by me for the purpose of securing a reduced rate of freight; in consideration thereof, in

case of loss or injury to said live stock the liability of the carrier or carriers shall not exceed the above amount per head." And on the back of the contract is the following indorsement: "From Keytesville, Mo., to Nat'l St'k Yds. Shipper Perry Lee, Keytesville. Consignee, Sanders Com. Co. Nat'l Stk. Yds."

We regard the contract thus gathered from the whole paper, as naming the National Stock Yards to be the point of destination. So regarding it, the question is, is the defendant as initial carrier, liable for the negligence of the connecting carrier? The rule, as has been stated by this court, is that, if the receiving carrier's contract is to transport the freight to point of destination, it cannot limit its liability for the negligence of a connecting carrier. And the receipt of freight and issuing a bill of lading therefor to a destination beyond its own line is prima facie an agreement to carry to such point, even though there is no express stipulation to transport to such point, and that to prevent such operation of the contract it becomes necessary for the initial carrier to stipulate that it is only to carry to end of its own line. [Bank v. Railroad, 72 Mo. App. 82; Marshall v. Railroad, 74 Mo. App. 81; Popham v. Barnard, 77 Mo. App. 628, 629.] This view of the initial carrier's contract. as influenced by the statute, has been approved by the Supreme Court in the cases of Marshall v. Railroad, 176 Mo. 480, and Western Sash and Door Co. v. Railroad, 177 Mo. 641. And it follows that the defendant is liable for the negligence of the connecting carrier, since there is nothing in the contract which can be construed into an agreement that defendant would only carry the cattle to the terminus of its own line. It does undertake to relieve defendant of "responsibility only to its own line;" and that it cannot do, under the statute, except by contracting that it will not carry beyond its own line.

Defendant complains that the verdict of $200 is excessive and it seeks to make such excess appear in the following way. In a part of the foregoing quotation

from the contract of shipment is found a valuation of
$50 per head of cattle, and in case of loss or injury, the
liability of the carrier is limited to a sum not exceeding
that amount per head. At $50 per head the forty-seven
cattle, if all lost, would amount to $2,350. They were
sold for $2,262.90, being only $87.10 less than the total
contract valuation. From this defendant says the
amount of damage under the contract was only the latter
sum. We do not consider such view of the contract as
just or sound. If it were, then if one-half of plaintiff's
cattle had been lost through negligence and yet he had
received $100 per head for the remaining half, he would
not have been damaged. The meaning of the contract is
that for loss or injury to any one or more of the cattle,
the damages shall not exceed $50 for *each one*. It was
of no consequence to defendant what plaintiff got for
his cattle. Its only concern was as to the amount in
dollars each one was injured, and to see that it was not
made to pay more than $50 for each one.

There is no just ground of complaint as to the in-
structions given and refused. The point made as to
some of plaintiff's being a departure from the allega-
tions of the petition, we think not borne out by the
record. The petition complains of delay for an unrea-
sonable time, or of failure to deliver within a reason-
able time, and the instructions submit that hypothe-
sis. It is true that it is alleged that plaintiff missed
a certain market time in consequence of this delay. But
that was merely an allegation of the consequence of the
negligence whereby the damages were made to appear.
We are satisfied that, fairly and properly considered, the
petition and instructions are not subject to criticism.

Other points of objection have been examined, but
we believe them not of sufficient moment to justify us
in remanding the cause for another trial. Believing
that no error was committed substantially affecting
the merits of action, we must affirm the judgment. All
concur.