FREEMAN & HINSEN, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 2 and June 4, 1906.

1. COMMON CARRIERS: Loss of Goods: Notice. A carrier may stipulate for speedy notice of loss since it is entitled to a fair opportunity for an investigation of the claim; and if the provision is reasonable the shipper should comply therewith. Authorities considered.

2. ———: ———: Shipper's Order: Purchaser. Where the goods are shipped to the shipper's order, notify the vendee, giving name, it is his duty to be on hand at the arrival of the goods; and the vendee, so far as the carrier and the shipper are concerned, is the shipper's agent to receive the goods.

3. ———: ———: ———: ———: Evidence: Negligence. The evidence relating to the contract of the purchaser in relation to receiving the goods is reviewed and the loss held to be the result of the purchaser's negligence.

4. ———: ———: Notice: Consideration: Waiver. *Held*, that there was a consideration for the stipulation requiring notice of loss, and that the facts do not support a waiver of the provisions.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*Cyrus Crane* and *George J. Mersereau* for appellant.

(1) The plaintiffs failed to make their claim for loss and damages in writing within five days of the arrival at destination of the corn in controversy. Rice v. Railway, 63 Mo. 314; McBeath v. Railway, 20 Mo. App. 445; Brown v. Railway, 18 Mo. App. 568; Thompson v. Railway, 22 Mo. App. 321; Dawson v. Railway, 76 Mo. 514; Messengale v. Telegraph Co., 17 Mo. App. 257; Leonard v. Railway, 54 Mo. App. 293; Smith v. Railway, 87 S. W. 9; Ward v. Railway, 158 Mo. 226. (2) Plaintiffs' instruction numbered 2 was erroneous, and should not have been given. Glascock v. Railroad, 69 Mo. 589; Rogan v. Railway, 51 Mo. App. 665; Helm v. Railway, 98 Mo. App. 419; Corbett v. Mooney, 84 Mo. App. 646; Dyer v. Combs, 65 Mo. App. 148; Calkins v. Bank, 99 Mo. App. 509; Dawson v. Wombles, 86 S. W. 271; Polson v. Collier, 18 Mo. App. 604. (3) The court erred in giving the plaintiffs' instruction numbered 3.

*Sherman & Fletcher* for respondent.

(1) Every shipper has the right to demand of a common carrier that his goods be carried under the strict common law liability as an insurer, and any limitation of such liability must be supported by a consideration. This rule is so well established that it hardly seems necessary to cite authorities, but in support of said doctrine, we refer to the case of Paddock v. Railway, 60 Mo. App. 328; Kellerman & Son v. Railway, 68 Mo. App. 255; Live Stock Co. v. Rail-

road, 100 Mo. App. 674; Mfg. Co. v. Railroad, 101 Mo. App. 442; Ward v. Railway, 158 Mo. 226; Hance v. Railway, 56 Mo. App. 476. (2) Every limitation of the common law liability, whether requiring consideration or not, must be reasonable and just, and under the facts in this case said stipulation is unreasonable and unjust. (3) Plaintiff's claim is based upon the contract of the defendant to safely transport and convey the shipments in question within a reasonable time, and the evidence shows its failure so to do and the damage therefrom. Daggett & Price v. Shaw, 3 Mo. 264; Wolf v. Express Company, 43 Mo. 425; Hill v. Sturgeon, 28 Mo. 326; Davis v. Wabash, 89 Mo. 349.

JOHNSON, J.—Plaintiff shipped two cars of corn at different times over defendant's line of railroad from Kansas City to points in Louisiana and claims that in consequence of defendant's failure to safely transport them within a reasonable time the corn in both cars was damaged. The petition is in two counts, each shipment being made the basis of a separate cause of action. Plaintiffs recovered judgment on both counts and defendant appealed. It is conceded that defendant received the cars at Kansas City as a common carrier for hire, but in the answer defendant alleges that plaintiffs failed to comply with this provision of the written contracts of affreightment, under which the transportation was made:

"It is further agreed that all claims for loss and damage to freight transported hereunder shall be made in writing by consignors or consignee to the auditor of this company, or the station agent of the delivering company at the point of destination within five days of its arrival there and, that if such notice or application is not so given or made, this company shall not be held liable for any loss or damages to said freight whether same is occasioned by the negligence or fault of this company or otherwise, failure to give such notice being

deemed a waiver and surrender of any such claim for loss or damage." Plaintiffs admit notices of loss were not given in the time specified, but endeavor to justify their failure to comply with this requirement of the contracts upon the following grounds:

First: That there was no consideration to support the stipulation. Second: Defendant waived compliance with its terms. Third: Defendant had actual knowledge of the damage when the cars reached their destination: and fourth: Plaintiffs notified defendant in writing so soon as they could in the exercise of reasonable diligence ascertain the nature and extent of the damage.

The facts relating to the first shipment are as follows: On February 19, 1903, defendant received from plaintiffs a car loaded in bulk with 44,000 pounds of No. 2 white corn and issued its bill of lading in writing for the transportation of the car from Kansas City to New Iberia, Louisiana, and its delivery at destination to plaintiffs' order. The corn had been sold to Davis & Scharff of New Iberia, to whom delivery was to be made on the payment of a draft for the purchase price, drawn upon them by plaintiffs, and to which the bill of lading was attached. When plaintiffs turned over the car to defendant, they notified defendant to hold it for sacking, which meant that plaintiffs desired to place the corn in sacks before the car started forward. Defendant had a certain track in its yards in Kansas City called the "sacking track" where it placed all cars of grain held for sacking. For some reason, not shown, it failed to switch the car to that track until February 24th. Plaintiffs on that day sacked the corn and released the car to defendant, who took it to another track and discovered that it was overloaded. It was held until the 28th, when defendant transferred the corn to another car, but the shipment did not leave Kansas City until March 2nd. It arrived at New Iberia March 11th. The agent at that point testified, and in this is uncontradicted, that; "Ship-

ment came consigned, 'Shipper's order—notify Davis & Scharff,' and I notified them immediately on the arrival of the car. I notified them several times both by postal and personally. Upon notifying them, they advised me that as soon as they had room in their warehouse they would take the shipment. It was on the morning of March 25th they notified me they would reject the shipment and that was the first time they had refused to accept it. They kept promising to take the shipment from March 11th, when the car first arrived, and I notified them up to March 25th, when they finally refused it?" "Q. What were their reasons, if they gave any, for not taking the car?" A. "The crowded condition of their warehouse." On March 27th, the plaintiffs were advised by telegram from the bank at New Iberia of the dishonor of the draft by Davis & Scharff, the drawees. In response to their telegram to the drawees asking why payment of the draft was refused, they received a message on the same day, March 27th, saying, "Corn is heated, rotten and not worth the freight." On March 29th, plaintiffs had the corn inspected by a merchant in New Iberia, who advised them of its worthless condition, and on April 3rd plaintiffs presented a written claim to defendant for the damage sustained. The claim was rejected; for what reason does not appear; and this suit followed.

The corn was in good condition on the date it was sacked, February 24th. The evidence does not disclose its condition on February 28th, the date it was ready to go forward. At that season of the year, there was likelihood, known to both parties, of the corn germinating or fermenting if it remained unaired for a considerable length of time, especially if the weather was warm and it was subjected to dampness. The witness, who examined it at New Iberia, said it was "green, mouldy and half rotten." Another witness testified the car "had a leaky roof" and it was shown that the weather was warm and rainy during the greater portion of the time consumed

in the transportation. The distance between Kansas City and New Iberia is eight hundred and thirty-five miles and the evidence most favorable to plaintiffs shows that the usual time consumed in the transportation of such freight between the two places is seven or eight days.

The second shipment consisted of 56,000 pounds of No. 2 white corn. It was received in good condition by defendant on March 27, 1903, at Kansas City for delivery at Opelouses, Louisiana, a distance of eight hundred and thirty-eight miles. It left Kansas City March 29th and arrived at its destination April 14th damaged to the extent of ten cents per bushel on account of being "heated, stained and mildewed in the middle of the sacks." It is not shown when plaintiffs presented a claim for their loss on this car, but it is admitted that it was long after the expiration of five days from the date of the delivery at destination and it does not appear that defendant had any notice of the damage to that shipment before that received from the presentation of plaintiffs' claim, and the first information of any kind received by defendant relative to damage sustained by the first shipment came from a conversation between one of plaintiffs and defendant's commercial agent in Kansas City that occurred on March 27th, more than two weeks after that shipment arrived at its destination.

That a common carrier may by stipulation in the contract of affreightment require the speedy giving by the shipper of written notice of loss as a condition precedent to the enforcement of a cause of action is too well settled to call for any discussion. [Rice v. Railway Company, 63 Mo. 314; McBeath v. Railway, 20 Mo. App. 445; Brown v. Railway, 18 Mo. App. 568; Thompson v. Railway, 22 Mo. App. 321; Dawson v. Railway, 76 Mo. 514; Massengale v. Tel. Co., 17 Mo. App. 257; Leonard v. Railway, 54 Mo. App. 293; Smith v. Railway, 112 Mo. App. 610.] The carrier is justified in providing an opportunity for the intelligent and accurate

investigation into the merits of such claims while the means of information are accessible. To deprive it of this right would result in many cases in its utter inability to defend itself against unjust claims. Such special provision is valid and binding when it is reasonable; necessary to the accomplishment of its object and affords the shipper under the circumstances of the particular case a fair opportunity by the exercise of ordinary diligence to learn of his loss and give the notice in the required time. [Richardson v. Railroad, 62 Mo. App. 1; Popham v. Barnard, 77 Mo. App. 619; Ward v. Railway, 158 Mo. 226; Rice v. Railway, supra.]

In the case last cited, the supreme Court said: "While . . . such special agreements are valid and binding when they are reasonable, they should be reasonably and justly construed in their application to each case as it arises in determining the question whether the required notice both as to form and time has been substantially complied with or whether delay has been occasioned in giving the notice by the acts of defendant or whether compliance as regards time or form has been waived." In Richardson v. Railway, supra, the carrier had actual knowledge of the injury to the animal being carried and killed it to relieve it from pain. We held "that defendant's own conduct made a notice wholly unnecessary and that it would be altogether unreasonable to require that it should be given." Its purpose had been served by the actual knowledge of the carrier of the fact of injury indisputably evidenced by the carrier's conduct. In Popham v. Barnard, much relied upon by plaintiffs, a car of apples was damaged in transit by freezing and it appears that "the succeeding carrier which was selected by defendant to carry forward the plaintiff's apples and to collect of the consignee its *pro rata* part of the freight charges and account to it therefor was, as appears from the face of the expense bill, advised of the frozen condition of the apples; so that it seems the defendant was quite as well

apprised of the damage as the plaintiff." We observed that "under such conditions no reason is seen why the plaintiff should have been required to give the defendant notice of the object of the law in requiring notice in such cases is simply to afford the carrier an opportunity to inquire into the loss so that unjust claims may be thwarted."

In Ward v. Railway, supra, the goods were lost in transit and therefore did not reach their destination. The carrier knew of the loss and the Supreme Court said: "Further notice of its loss would have been a useless formality. Written notice of a claim for damages could have in nowise aided defendant in the matter of making an estimate of the true value of the things lost or have, in any way, prevented an over or fraudulent valuation being placed upon the goods by plaintiff."

These instances are given for the purpose of illustrating the under-lying principle followed by the courts in cases of this character. The right of the carrier to receive notice, as stipulated, will be enforced when necessary to prevent possible imposition in the particular case, but it will not be unreasonably nor harshly applied to deprive the shipper of his lawful rights, nor will it be enforced at all when its purpose has been fully and unequivocally accomplished.

But from the facts of the case before us we do not think the shippers have excused themselves for their failure to give the notices, even under the liberal doctrine just stated. Their argument that they moved with all reasonable expedition to acquaint themselves and advise defendant of the nature and extent of the damage when they learned that they had been damaged does not fill the measure of their own duty. Speaking from the facts relating to the first shipment, plaintiffs knew that sending corn at that season into a warmer climate, under the weather conditions then prevailing, subjected it to risk of being injured even when carried with due care, yet they negligently failed to provide for its prompt

reception when it arrived at destination. As consignees, it was their duty to be on hand ready to receive it. [Hutchinson on Carriers, sec. 386.] So far as the relation between plaintiffs and defendant is concerned, the vendees at New Iberia may properly be treated as agents designated by plaintiffs to receive the corn. They permitted it to remain sealed in the car for two weeks without any inspection. How can any reasonable person say how much damage the corn received from the injurious processes that must have been in operation during that period? If this fact cannot be known, neither can any one tell the extent of the damage that had accrued when the car reached its destination.

The facts of this case pointedly exemplify the wisdom of the rule that sustains a regulation of this character. With the corn sealed in the car and concealed from view, defendant did not and should not be expected to know its condition on arrival. It had no opportunity to investigate and protect itself; while, on the other hand, plaintiffs who were constructively present in the persons of their agents, the consignees, had the means of immediately informing themselves of the condition of the corn and negligently failed to use them. That the time prescribed was sufficient is shown by the fact that in two or three days after plaintiff received notice of the nonpayment of their draft they knew of the full extent of their damage. It thus appears that their own neglect to provide for a prompt inspection of the corn on arrival at its destination was the sole cause of their failure to present the claim in time and that this neglect of their duty prevented defendant from exercising a reasonable contract right.

There is no merit in the contention that this regulation was without consideration to support it, nor are there any facts in proof from which it fairly may be inferred that defendant waived compliance with the provision. The principles stated, when applied to the facts of the second shipment, lead to the conclusion that the

failure to comply with the stipulation relating to the giving of notice was likewise there the result of plaintiffs' neglect to inform themselves of the condition of the corn within a reasonable time after its arrival.

The demurrer to the evidence offered by plaintiffs should have been sustained. The judgment is reversed. All concur.