SAMUEL HARDIN GRAIN COMPANY, Respondents, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, July 2, and October 1, 1906.

1. COMMON CARRIERS: Contract: Delay: Connecting Carrier: Construction. A contract of affreightment is construed to be a shipment to a point beyond the destination of the carrier and consequently it became liable for damages for the negligent delay of the connecting carrier, despite the attempted restriction in that regard.

2. ——: ——: ——: Notice: Construction. Regarding a stipulation in a shipping contract requiring notice of damages by the consignee in writing to the delivering carrier, it is held that where the acceptance of the knowledge of the damage is in effect conceded and the carrier has been afforded every opportunity to investigate the nature and extent of the damage as the notice was intended to provide, and therefore the purpose of the notice, being satisfied, no reason appears for compelling the shipper to perform an obviously useless condition.

3. ——: Evidence: Letters: Mailing. Certain letters, failing to be produced by the defendant as required, the plaintiff testified that he dictated the letters, and after being written out, read and signed them and delivered them to his stenographer to mail according to the custom of the office, but failed to produce the stenographer to show that she proceeded according to the routine of the office, to mail the letters. *Held*, impression copies were not admissible.

4. ——: Contract: Damages: Construction. The contract provided in case of loss the value of the property at the place of shipment should be the measure of damages. The property,

by reason of delay, reached its destination in a damaged condition. *Held*, the stipulation referred to property lost in transit and not to property damaged, and the measure of the damage of the injured property is the difference between the market value of the property at destination.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

REVERSED AND REMANDED.

*Elijah Robinson* for appellant.

(1) The trial court committed error in permitting plaintiff Hardin to testify as to the value of the corn chops at Kansas City. (2) If plaintiffs were entitled to recover at all, the measure of their damages was the difference between the value of the corn chops at Babcock, Georgia, at the time they were delivered there, and the value at the time they should have been delivered. Faulkner v. Railroad, 51 Mo. 311; Klass v. Railroad, 80 Mo. App. 164. (3) The trial court committed error in permitting plaintiffs to read in evidence what purported to be letters from Samuel Hardin to M. D. Darnall. (4) There was no evidence in the case showing or tending to show that there was an unreasonable delay in the shipment of the property in question. (5) The bill of lading provided that the defendant should not be liable for any damage that did not occur upon its line, and the evidence showed conclusively that there was no unreasonable delay on the defendant's line, and consequently no damage occurred on its line. Dimmitt v. Railroad, 103 Mo. 433; Nines v. Railroad, 107 Mo. 475; McCann v. Eddy, 133 Mo. 59. (6) The bill of lading provided that notice of any claim for damages should be given the delivering line within thirty-six hours after notice of the arrival of the property at the point of destination, and the evidence shows that no such notice was given. It necessarily follows that plaintiffs were not en-

titled to recover. Dawson v. Railroad, 76 Mo. 514; Brown v. Railroad, 18 Mo. App. 568; Thompson v. Railroad, 22 Mo. App. 321. (7) The trial court committed error in giving plaintiffs' instruction on the measure of damages. This is so apparent that there cannot be any question about it. Faulkner v. Railroad. 51 Mo. 311; Klass v. Railroad, 80 Mo. App. 164; Gray v. Packet Co., 64 Mo. 47; Gray v. Railroad, 54 Mo. App. 666.

*Sherman & Fletcher* for respondents.

(1) The trial court did not commit error in permitting the plaintiffs to show the value of the corn chops at Kansas City at the time of shipment, for the reason that the bill of lading under which the shipment was made provided that "the value or cost of the same at point of shipment shall govern the settlement." The stipulation above quoted is valid and binding, and evidence tending to show the market value of the property is admissible under such stipulation. Rogan v. Railroad, 51 Mo. App. 665; Horner v. Railroad, 70 Mo. App. 285. (2) The trial court properly permitted plaintiffs to read in evidence copies of letters from Samuel Hardin Grain Company to M. D. Darnall, commercial agent of the defendant. Written notice was served upon the attorney for the defendant to produce such letters. Upon his failure to do so, it was shown that the letters of March 27th and April 25, 1903, were dictated by Mr. Hardin to his stenographer; that the same were transcribed and duly signed by the witness; that it was customary for the stenographer to enclose said letters in envelopes, properly addressed, with return card thereon, and stamped with a United States two-cent stamp; that the same were mailed in the United States mail by depositing the same in a mail chute not more than twenty or twenty-five feet from the plaintiffs' office, and that said letters had never been returned; that the young lady stenographer who attended to this part of the office work was dead;

that copies introduced in evidence were true and correct impression copies of the letters mailed. Under such circumstances, secondary evidence is admissible. Traber v. Hicks, 131 Mo. 180; Mfg. Co. v. Shreve, 104 Mo. App. 474. (3) The bill of lading was a through contract, and the defendant is liable for any damage occurring by reason of its own negligence or that of its connecting carriers. Popham v. Barnard, 77 Mo. App. 619; Marshall & Michel v. Railroad, 176 Mo. 480; Sash & Door Co. v. Railroad, 177 Mo. 641. (4) The stipulation requiring notice of a claim for damages within thirty-six hours after notice of the arrival of the property at destination was unreasonable under the circumstances. There was no consideration therefor, and the personal knowledge of the agent of the delivering line at destination, and the presentment of a written claim by the plaintiffs within a reasonable time after receiving information of the damage, was a sufficient compliance with said stipulation. Ward v. Railroad, 158 Mo. 226; Popham v. Barnard, 77 Mo. App. 619. (6) The trial court did not commit error in giving plaintiffs' instruction on the measure of damages.

JOHNSON, J.—Plaintiffs, grain dealers doing business in Kansas City under the name of Samuel Hardin Grain Company, brought this action against defendant, a common carrier, to recover damages resulting from the alleged unreasonable delay in the transportation of a carload of corn chops from Kansas City to Babcock, Georgia. The shipment was received by defendant on March 27, 1903, and from the contents of the bill of lading issued therefor by defendant it is evident the contract made by the parties included the agreement of defendant to carry the shipment to its destination, a point beyond the line of defendant, consequently defendant became liable for damages to the property that resulted from negligent delay in its transportation.

whether such delay occurred on its own line or on that of a connecting carrier, and despite the provision in the bill of lading, by which defendant attempted to restrict its liability to the consequences of its own acts.   [Buffington & Lee v. Railroad, 118 Mo. App. 476; Bank v. Railway, 72 Mo. App. 82; Marshall v. Railway, 74 Mo. App. 81; Popham v. Barnard, 77 Mo. App. 628; Marshall v. Railway, 176 Mo. 480; Western Sash Co. v. Railway, 177 Mo. 641.]

It was shown by plaintiffs that the corn chops left Kansas City on the day of shipment in good condition, that ten days were a reasonable time for the transportation, and that, had no longer time been consumed, the chops would have sustained no damage in transit.   It was conceded that the shipment did not arrive at Babcock until April 21st, more than three weeks after it left Kansas City—and that on arrival the chops were found to be in a badly damaged condition from heating and fermentation.   The legal effect of conditions in the bill of lading was to limit defendant's liability on account of delays to those caused by negligence, but the facts and circumstances disclosed strongly tend to show a negligent origin of the delays that occurred.   The issues were submitted to the jury, a verdict returned for plaintiffs, and judgment entered accordingly, from which defendant appealed.

The bill of lading contained a provision requiring notice of damage to be "reported by the consignee in writing to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery," and it is argued by defendant that the action must fail because no such notice was shown to have been given.   Plaintiffs themselves were the consignees of the shipment, but on the bill of lading was indorsed the direction. "Notify Babcock Lb'r Co."   The delivering line was the Georgia, Florida & Alabama Railway Company.   On the day the

shipment arrived at Babcock the agent of that company at that point notified the Babcock Lumber Company of its arrival. Promptly responding to this notice, a representative of that company called at the station and he and the agent of the railway company inspected the contents of the car and acquainted themselves with the condition thereof. He testified, "When the car door was opened, the corn chops were found to be steaming and smelling very sour and were turning black. They were so hot I could not bear my hand in them. They had no ventilation." The agent testified, "On the 21st day of April, 1903. L. & N. car No. 4427 arrived in Babcock, Georgia, and on the 21st day of April (the same day) I examined the contents of said car and found it to contain corn chops in a very badly damaged condition, same being heated." No written notice was given the delivering line. Three days later plaintiffs were notified by telegram of the damage and immediately thereafter presented a claim in writing to defendant.

In the recent case of Freeman & Hinsen v. Railway, 118 Mo. App. 526, we said, "The right of the carrier to receive notice as stipulated will be enforced when necessary to prevent possible imposition in the particular case, but it will not be unreasonably nor harshly applied to deprive the shipper of his lawful rights. nor will it be enforced at all when its purpose has been fully and unequivocally accomplished." And in Richardson v. Railway, 62 Mo. App. 1, we observed that the object of such notice "is that defendant may have an opportunity of inquiring into the alleged loss so that unjust claims may be thwarted." Applying the principles followed in these and other cases (Popham v. Barnard, 77 Mo. App. 619; Ward v. Railway, 158 Mo. 226; Rice v. Railway, 63 Mo. 314), it would be harsh and unreasonable to enforce the letter of the stipulation under consideration since its purpose has been clearly accomplished. We are not saying that where the fact that the carrier received

actual knowledge of the damaged condition of the property within the period fixed for the giving of notice is controverted and therefore at issue, a shipper may relieve himself of his obligation under the shipping contract to give notice by satisfying the triers of fact that the carrier had actual knowledge of the damage, but are holding that where, as in the case in hand, the existence of such knowledge, in effect, is conceded, the carrier has been afforded the very opportunity to investigate the nature and extent of the damage, the notice was intended to provide, and the purpose of the notice thus being satisfied, no reason appears for compelling the shipper to perform an obviously useless condition.

Defendant objects to the admission in evidence of the impression copies of two letters plaintiffs claimed to have written and mailed defendant, the contents of which, in our opinion, have a material bearing on issues involved in the case. Plaintiff served timely notice on defendant to produce the original letters, but defendant denied having them in its possession and its officer, in whose custody they should have been, did not remember that such letters ever had been received. In order to lay the foundation for the introduction of the secondary evidence offered, it devolved on plaintiffs to show that the letters had been delivered to defendant. This, they attempted to do by the testimony of one of the plaintiffs, who testified that he dictated the letters to his stenographer, and, after they were written, read and signed them. He then returned them to the stenographer, whose duty it was to prepare them for mailing and then deposit them in a mail chute connected with a post box maintained in the building. Witness could not say from personal knowledge whether or not the stenographer had prepared these particular letters for mailing or deposited them in the chute, but stated that it was her custom to follow this course with all of the letters dictated by

120 App.—14

him. Had plaintiffs been able to produce the stenographer and had she testified that, although she had no recollection of the particulars, she invariably prepared and mailed in the "chute" all letters received by her for mailing the evidence would have been sufficient, but, as it now stands in the record, the evidence leaves the letters in the hand of the stenographer. Evidence of the general course of business followed in plaintiffs' office cannot supply the missing link in the necessary evidentiary chain. [Goucher v. Carthage Novelty Co., 116 Mo. App. 99; Ward v. Morr Transfer & Storage Co., 119 Mo. App. 83; Pier v. Heinrichshoffen, 67 Mo. 163; Bank v. Pezoldt, 95 Mo. App. 404; Hetherington v. Kemp, 4 Camp. 193.] The subject has been fully discussed by us in the Goucher and Ward cases and we refer to them for a full understanding of the views we entertain. As no proper foundation was laid for the introduction of secondary evidence, the court committed reversible error in admitting the copies.

Defendant claims that the court committed error in the instruction relating to the measure of damages and the point would be well taken had the error not been induced by defendant's own interpretation of a stipulation in the shipping contract. However, in view of the probability of a retrial of the case, we will construe the provision and announce the rule that should be applied. The contract states that, "In the event of the loss of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement." This clearly refers to property lost in transit and not to property damaged during the transportation by the fault of the carriers and consequently can have no effect on the general rule of law controlling cases similar to the one before us. The measure of damages is the difference between the market value of the chops at Babcock in the condition in which they would have been received had they been delivered

in a reasonable time and their market value at Babcock in the condition in which they were at the time of their arrival.

We find no other error in the case but, for that noted, the judgment is reversed and the cause remanded. All concur.