MARSHALL & MICHEL GRAIN COMPANY v. KANSAS CITY, FORT SCOTT and MEMPHIS RAILROAD COMPANY, Appellant.

Division Two, June 30, 1903.

1. **Carrier's Liability to Shipper for Loss of Freight:** CONTRACT AGAINST CONNECTING LINE. A carrier which receives freight under an agreement to transport it to a point outside this State, can not escape liability to pay for the same when it is lost by the negligence of a connecting carrier entirely outside this State, by a clause in the bill of lading exempting itself from liability on account of the negligence of the connecting carrier.

2. ———: STATUTE: CONSTITUTIONAL. The statute (sec. 5222, R. S. 1899) which extends the liability of a railroad for loss in shipment of freight received by it to be transported to places outside this State beyond the end of its line to losses occasioned by the connecting line, is not unconstitutional.

3. ———: DESTINATION LEFT BLANK. A bill of lading which leaves blank the point of destination to which the goods are to be shipped, but by an indorsement at the end of the bill shows that the place to which they were to be shipped was a point named beyond its own lines outside this State, is, in the absence of a stipulation that it was to carry the goods only to the end of its own line, prima facie an agreement to carry them to such designated point.

4. ———: CONTRACT: LIMITING LIABILITY. A railroad can not contract for a through shipment to a point beyond its own line, and at the same time exempt itself from liability for the negligence of the connecting carrier which completes the transportation.

5. ———: DELIVERY TO CONSIGNEE: CONVERSION. The shipper of goods has the right to designate the consignee, and the carrier is bound

Marshall & Michel Grain Co. v. K. C., F. S. & M. Ry. Co.

to obey the directions of the shipper, or to comply with the terms of the contract of shipment as to delivery, and if it disobeys them it is liable as for a conversion.

6. ————: ————: ————: WRONGFUL DELIVERY: RETURN. An offer to return the goods to the shipper after a wrongful delivery and a restoration of them into the hands of tne carrier, does not furnish any justification for the conversion in the first instance, although such offer might be considered in mitigation of damages.

7. ————: ————: ————: BILL OF LADING ATTACHED. Plaintiffs sold a carload of corn to a grain company in Little Rock, and not having been paid for it and not wishing it to be delivered without receiving pay, attached a sight draft to the bill of lading, which named the grain company as consignee, and sent them to a bank in Little Rock to be collected, so that the consignee could not get the corn without paying the draft, but on the arrival of the car at Little Rock the connecting carrier delivered it to the grain company which did not have the bill of lading and in fact never paid the draft, and the plaintiff shippers, having received notice of delivery, refused to have anything further to do with the corn, whereupon the connecting line demanded a return of the corn, and stored it in a public warehouse, and a year afterwards sold it at public auction. *Held*, that the company receiving the corn in this State for transportation is liable to the shipper for the corn as for conversion.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

AFFIRMED.

*L. F. Parker* and *Pratt, Dana & Black* for appellant.

At the close of evidence on the part of plaintiff the trial court should have sustained defendant's demurrer to the evidence, and at the close of all the testimony should have directed a verdict in favor of defendant: First. Because, since the contract of carriage expressed in the bill of lading was, on defendant's part, to carry only over its own line, and as the alleged conversion (if there was any) occurred at Little Rock on the line of a connecting carrier and was the act of that carrier, there was no evidence of any failure on the part of defendant under the contract to discharge its duty to plain-

Vol 176 mo—31

tiff. This suggests the point which gives this court jurisdiction of the appeal: that section 5222, Revised Statutes 1899, when construed and applied to the bill of lading introduced in evidence by plaintiffs as the trial court construed and applied it, was repugnant to article 1, section 8, of the Federal Constitution (the interstate commerce clause) and denied defendant the freedom of contract in such matters, which Congress alone can regulate. Dimmitt v. Railroad, 103 Mo. 440; McCann v. Eddy, 133 Mo. 59, 174 U. S. 580; Richmond, etc., Co. v. Patterson Co., 92 Va. 670, 169 U. S. 311; Hanley v. Railroad, 23 Sup. Ct. Rep. 214; Patterson v. Railroad, 56 Mo. App. 660; Minter Brothers v. Railroad, Ibid 290. Second. If it be held that defendant was legally responsible for what occurred at Little Rock, still it was entitled to a verdict and to a peremptory charge therefor, because there was no conversion of the corn by its connecting carrier. Sparks v. Purdy, 11 Mo. 226; Koch v. Branch, 44 Mo. 542; Nansen v. Jacob, 93 Mo. 331; Niemetz v. Assn., 5 Mo. App. 63; Kreher v. Mason, 33 Mo. App. 297. There was no demand for the corn or offer to surrender the bill of lading. Ross v. Clark, 27 Mo. 550.

*Thomas Dolan* for respondent.

(1) Appellant's connecting carrier became the agent of appellant for the delivery of this corn to respondent or its order at Little Rock, but they deliver the corn instead to the Little Rock Grain Company, and whether as consignee or warehouseman, it was determined as an issue of fact that it was delivered to the grain company as consignee. Thus appellant converted the corn, and after having converted it sought to have the respondent waive the conversion by taking the corn back, and respondent finally did take the corn and sell it under the stipulation giving to appellant credit for the amount received therefor. All the questions in this

case have been once decided against appellant in Marshall v. Railroad, 74 Mo. 581. (2) The case of Railroad v. McCann in 174 U. S. 580, does not bear out appellant's contention. Hart v. Railroad, 69 Iowa 490; Solon v. Railroad (Iowa), 63 N. W. 692; Bags v. Railroad (N. C.), 14 L. R. A. 596. (3) The authority cited on behalf of appellant as to what constitutes a conversion is not applicable to the case at bar. It is an elementary principle that "a carrier who, without excuse, delivers goods to the wrong person, converts them." Bishop on Non-Contract Law, sec. 405; Railroad v. White, 6 Bush 251; Roberts v. Yarboro, 41 Tex. 449; Chaflin v. Railroad, 7 Allen 341. The delivery of goods even to a connecting carrier for transportation when the shipper has designated another connecting carrier, is a conversion of the goods. Wiggins Ferry Co. v. Railroad, 128 Mo. 248. (4) Then, again, appellant makes a point that the railroad company offered to return the corn after it had been delivered and held ten days and then delivered back again into the cars. This can not excuse the conversion. "For the return of chattels after a conversion will not defeat the right of action though it may go in mitigation of damages." Sparks v. Purdy, 11 Mo. 219. (5) The damages were reduced in the case at bar by the sale of the corn on stipulation between appellant and respondent, and appellant gives due credit for the amount received.

BURGESS, J.—On August 5, 1895, Marshall & Antles, of whom plaintiffs are successors, delivered to the defendant a car of corn for shipment over its railroad from Joplin to Little Rock, Arkansas, with instructions on the bill of lading to notify the Little Rock Grain Company; Little Rock was not on the line of defendant's road, but the agent of defendant at Joplin, having authority to so do, contracted with the shippers to transport said car of corn to Little Rock, and received therefor the entire freight charge and rate be-

tween Joplin and Little Rock, and delivered to the shippers a bill of lading for said car of corn. The bill of lading showed the receipt by defendant from Marshall & Antles of one car of corn said to weigh 33,375 pounds. "to be transported over the line of this [defendant's | railway to . . . and delivered after payment of freight and advance charges in like good order to the consignee, or a connecting carrier if the same are to be forwarded beyond the line of this company's road, to be carried to the place of destination; it being expressly agreed that the responsibility of this company shall not extend beyond its own line."

The bill of lading also showed that the corn was consigned, "S. O. notify Little Rock Grain Company, Little Rock, Arkansas."

The distance from Joplin, Missouri, to Little Rock, Arkansas, by the route which the car was to travel, that is, over defendant's road to Jonesboro and from there over the St. Louis Southwestern railroad (commonly spoken of as the Cotton Belt road), was about four hundred miles. A reasonable time for the transit would be from four to six days, and the car reached Little Rock, August 10, 1895.

The shippers had sold the corn to the Little Rock Grain Company for $268.20, and upon receiving said bill of lading from appellant's agent, they drew a draft through their bank at Joplin upon the Little Rock Grain Company for that amount. The draft was deposited in said bank at Joplin with the bill of lading attached and went through regular collection channels by way of Kansas City to Little Rock, where on August 9, 1895, it was presented by the clerk of the German National Bank in that city to the Little Rock Grain Company for acceptance. The drawee refused to accept the draft because the corn had not arrived; the clerk thereupon protested the draft for non-acceptance for that reason, and notified plaintiff.

The draft was returned to plaintiff through the bank at Joplin and the protest fees, amounting to $3.46, were charged to them. Plaintiff had defendant's agent trace the corn, and on August 13th, said agent (Conley) received from the Cotton Belt agent at Little Rock a telegram which was at once shown to plaintiff, reading: "Car F. S. & M. 2194 arrived 10th; delivered Little Rock Grain Co., Aug. 12th." The same day (August 13th) plaintiff drew another draft on the grain company for the amount of the first one plus the protest fees and deposited it in the same Joplin bank with the same bill of lading attached. This draft on August 17, 1895, was presented by the same bank clerk at Little Rock to the grain company there for acceptance; thereupon the grain company telegraphed plaintiff: "Your draft with protest fees added is here. Is subject to protest. Will pay only invoice face. This ultimatum." The plaintiff having made no reply the grain company refused to accept the draft because "the amount was not correct," and the bank clerk protested it and notified the plaintiff thereof.

The second draft with original bill of lading attached was returned through the same channels to the shippers, who kept the bill. They made no effort to secure the corn, gave no directions for its disposition, nor was the bill of lading ever presented to appellant or its connecting line, the Cotton Belt Railway Company, nor was any demand ever made by the shippers or anybody for them upon either of said railroad companies for the corn. Nor did they ever give the purchaser any chance to pay the price agreed on and get the corn; instead they held on to their shipper's order bill of lading and refused to give any directions for the disposal of the corn, though frequently asked to do so.

After the arrival of the corn at Little Rock the car was placed upon the warehouse track of the grain company where it was unloaded by that company (its identity being preserved) as a warehouseman under a gen-

eral bond given by the Cotton Belt Railway Company. A few days afterwards the bill of lading not having been presented by the grain company, the Cotton Belt Company's agent at Little Rock demanded the surrender of the bill or of the corn; the bill of lading not being produced for the reasons already stated, the corn was at once reloaded into a car furnished by the Cotton Belt Company, being the identical corn which plaintiff had shipped and in exactly the same condition as when it reached Little Rock, there being no claim or pretense that it had sustained any damage whatever.

On August 22, 1895, the shippers were asked by the Cotton Belt Company for directions as to the disposition of the corn, whereupon they replied:

"Yours 1st. Have just notified Memphis road we would not accept car since it has been delivered once. Our draft now amounts to $275.12, and will take matter up with G. F. A. Memphis road and get protection, and you to protect yourself had better wire authority to make draft at once. As to terms, etc., it is quite evident that we know as much, or more, about terms than you do about S. O. shipments, and advise you to act promptly in this matter before it is out of our reach."

Repeated demands were made by the Cotton Belt Company in correspondence with the shippers to induce them to receive the corn or direct its disposition, which they refused to do, and it was finally stored with a warehouseman at Little Rock and the shippers were advised of that fact and that it would still be delivered to them on presentation of the original bill of lading.

The grain was subsequently, about a year after its shipment and long after this action was begun, sold by the shippers to the highest bidder at Little Rock, the net proceeds of the sale, after deducting warehouse charges, amounting to $128.50. These charges were for storage at the rate of one-quarter of one cent per bushel per month, and were only for the charges of the second warehouseman.

February 22, 1896, this action was begun before a justice of the peace to recover the value of the corn at the selling price above stated, upon the ground that defendant had received the corn for shipment to the shippers at Little Rock, Arkansas, "and to there deliver it to said Marshall & Antles or their order, but said defendant company, its officers and agents, instead of so delivering said cor , wrongfully converted the same to their own use." From a judgment for plaintiff defendant appealed to the circuit court, where a jury was waived, and on trial a judgment rendered by that court in favor of defendant, from which plaintiff appealed to the Kansas City Court of Appeals, which reversed the judgment, remanding the cause, after which it was tried before the circuit court and a jury and a judgment rendered for plaintiff for $137.70, from which this appeal has been prosecuted by defendant.

The appeal was taken to this court because constitutional and Federal questions are claimed to be involved.

At the close of the evidence on the part of plaintiff, and, again at the close of all the evidence, defendant asked an instruction in the nature of a demurrer to the evidence which was refused, and the action of the court in this regard is assigned for error. The argument is that since the contract of carriage expressed in the bill of lading was, on defendant's part, to carry only over its own line, as the alleged conversion (if there was any) occurred at Little Rock on the line of a connecting carrier, it was the act of that carrier, hence there was no evidence of any failure on the part of defendant under the contract to discharge its duty to plaintiff. And that section 5222, Revised Statutes 1899, when construed and applied to the bill of lading in evidence as the trial court construed and applied it, is repugnant to article 1, section 8 of the Federal Constitution, and denied the defendant the freedom of contracting in such matters. That section of the statute reads as follows:

"Whenever any property is received by a common carrier to be transferred from one place to another, within or without this State, or when a railroad or other transportation company issues receipts or bills of lading in this State, the common carrier, railroad, or transportation company issuing such bill of lading shall be liable for any loss, damage, or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad, or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage, or injury it may be required to pay to the owner of such property, from the common carrier, railroad, or transportation company, through whose negligence the loss, damage or injury may be sustained."

In support of this contention defendant relies upon Dimmitt v. Railroad, 103 Mo. 440; McCann v. Eddy, 133 Mo. 59, and Railroad v. McCann, 174 U. S. 580, and, says that in all these cases it was plainly intimated that, while the statute was not repugnant to the Constitution as applied to the facts of the case, then under consideration, it might be applied in such way as to become so, by a construction which denied to an interstate carrier the right and power to limit its contract of carriage, and consequent liability in case of an interstate shipment to its own line. We think those cases were properly interpreted by the Kansas City Court of Appeals in the case of Bank v. Railroad, 72 Mo. App. 82, wherein it was said: "A carrier receiving freight destined beyond its own line may stipulate that it will not be liable for negligence of the connecting carrier if its contract of carriage is limited to the end of its own route. But if the receiving carrier's contract is to transport the freight to point of destination, it can not so limit its liability, and must answer for the negligence

of the connecting carrier. Those cases further hold that the receiving carrier in receiving freight and issuing a bill of lading therefor to a point beyond its own line prima facie agrees to carry to such point, and to prevent such construction of the contract, it will be necessary that it stipulate it is only to carry to the end of its own line.''

That case was followed with approval in this case, 74 Mo. App. 81.

Moreover, McCann's case was affirmed by the Supreme Court of the United States in 174 U. S. 580, wherein it was held that the statute as interpreted by this court in that case could not be held to be repugnant to the Constitution of the United States.

It will be observed from the bill of lading that the point of destination to which the grain was to be shipped was left blank, hence there was no express agreement with respect thereto, but it was clearly shown by indorsement at the end of the bill of lading, that the place to which it was to be and was in fact shipped was Little Rock, Arkansas. And, defendant having received and issued a bill of lading for the corn to a point beyond its own line prima facie agreed to carry to such point in the absence of a stipulation that it was only to carry to the end of its own line. But defendant claims that, as it was expressly agreed by the bill of lading that its responsibility should not extend beyond its own line, it can not be held liable for the negligence of the connecting carrier. There being no evidence to the contrary it is clear, we think, that the contract was for a through shipment, and this being the case, could the defendant at the same time by contract exempt itself from liability on account of the negligence of the connecting carrier? In McCann v. Eddy, 133 Mo. 1. c. 69, it was said:

''We can not, therefore, give such an interpretation to the statute as would permit a carrier to contract for a through shipment and at the same time exempt

himself from liability on account of the negligence of connecting carriers. Such an interpretation would in effect operate as a repeal of the vital provisions of the law which declares a conclusive liability in such case. The statute does not undertake to change the law in respect to liability of a carrier for his own negligence, but to extend it to connecting carriers as well and declare a liability for negligence without regard to which was in fault. Under these views of the law, no difficulty is found in giving construction to the contract. The agreement to carry from Stoutsville to Chicago is absolute and unconditional. The thirteenth condition or covenant can only be regarded as an attempt, on the part of defendant, to relieve itself from the responsibility of answering for the negligence of the carrier by which it undertook to complete the contract. The statute forbids such a qualification of the contract. It can only be held to relieve defendant from its common-law liability of an insurer.''

In that case it is held that in a case where property is received by a carrier for transportation from one place to another, such carrier may be held liable for the negligence of any other carrier to which such property may be delivered, unless it *limits its duty* and obligation to transportation over its own route, which it may lawfully do. But, that such carrier can not contract for a through shipment, as in the case at bar, to a point beyond its line, *and at the same time exempt itself from liability for the negligence of the connecting carrier which completes the transportation.*

It was held in Railroad v. McCann, supra, that the statute as interpreted by this court in the same case could not be repugnant to the Constitution of the United States.

It is said that there was no conversion of the corn by defendant's connecting carrier and that the verdict should have been for defendant.

The evidence, however, showed that Marshall &

Antles had sold the corn to the Little Rock Grain Company, and not having been paid for it, and not wishing the corn delivered without receiving pay, attached a sight draft to the bill of lading, and sent said draft with the bill of lading attached to a bank in Little Rock for collection from the Little Rock Grain Company, so that the grain company could not get the car of corn without paying the draft.

But when the car of corn arrived at Little Rock, the agent of the Cotton Belt line, which line of road the defendant selected as its connecting carrier to Little Rock, delivered the car of corn to the Little Rock Grain Company, when the Little Rock Grain Company did not hold the bill of lading for the same, said bill of lading having been attached to the sight draft which had not been taken up by the Little Rock Grain Company, the Little Rock Grain Company having refused to pay the draft.

The Cotton Belt road was protected by a bond of the Little Rock Grain Company, so that if it became liable on account of delivery without the bill of lading it would be indemnified.

After inquiries had been made of defendant railroad company, plaintiff was notified by the local agent of the defendant company that the corn had been delivered to the Little Rock Grain Company. They refused then to have anything further to do with the corn, which was afterwards redelivered by the Little Rock Grain Company to the Cotton Belt Railroad Company, which company stored it in a public warehouse.

There can be no question but that the shipper of goods has the right to designate the consignee, or in other words, the person to whom they are to be delivered, and that the carrier is bound to obey the direction of the shipper, or to comply with the terms of his contract of shipment in this respect, and if he disobeys them he is liable as for a conversion. [Wiggins Ferry Co. v. Railroad, 128 Mo. 224; Railroad v. White, 6 Bush

251.] A misdelivery by a carrier of an article intrusted to him to be carried is a conversion. [Claflin v. Railroad, 7 Allen 341; Bishop on Non-Contract Law, sec. 405.] Nor does the fact that the railroad company offered to return the corn after it had been redelivered back again into the cars furnish any justification for the conversion, though it might be considered in mitigation of damages. [Sparks v. Purdy, 11 Mo. 219.]

A final contention is that the court erred in excluding competent and relevant testimony offered by defendant, and in admitting over defendant's objection incompetent and irrelevant testimony offered by plaintiff. The first contention is predicated on the fact that upon the cross-examination of plaintiff Marshall, who testified as a witness in behalf of plaintiff, defendant's attorney asked him if he was not notified from time to time, or if he did not know that the car of corn was still at Little Rock at its final disposal. This was objected to by plaintiffs' attorney as immaterial and the objection sustained.

The objection was, we think, well taken, for, as we have held, when the corn was once converted by defendant nothing that was thereafter done or offered to be done by defendant could have the effect of relieving it from its liability for the conversion.

Nor was error committed for like reason in excluding evidence offered by defendant to the effect that it was customary for defendant's connecting line to store corn in a warehouse at Little Rock, awaiting the demand of the bill of lading. It was immaterial.

On the redirect examination of plaintiff Marshall, his attorney asked him what was meant by "free time" as used by railroads and shippers of grain. This question was objected to upon the ground that it was immaterial, but the objection was overruled and the witness answered. That this testimony was immaterial, and should not have been admitted, we think clear, but we are unable to see in what way the jury could have been

misled or the defendant prejudiced by it, and do not, therefore, think the judgment should be reversed upon that ground.

Our conclusion is that the judgment should be affirmed, and it is so ordered. All concur.