SCOTT COUNTY MILLING COMPANY, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, April 30, 1907.**

1. **COMMON CARRIERS: Connecting Carriers: Negligence: Statutory Liability.** Section 5222, Revised Statutes 1899, making a common carrier liable for loss of property carried caused by its own *negligence* or that of any other carrier to which the property should be delivered, or over whose line it may pass, does not apply to a case where property was lost while in the custody of a connecting carrier but not through its *negligence*.

2. ———: **Bill of Lading: Construction.** A bill of lading for goods issued by a common carrier, prepared by its agent, when ambiguous should be construed most strongly against the carrier.

3. ———: **Connecting Carrier: Contract for Through Carriage.** Where a bill of lading for a carload of flour failed to name the place where the flour was received and the place of destination and provided that the carrier issuing it should be liable only for loss occurring while the property was in its own custody and on its own road, but provided further that the carrier's liability should terminate "on the arrival of the property at the station or place of delivery," and where the goods were consigned to the shipper at destination with directions to notify a party named there and the freight was collected for the entire distance to destination, it was a contract for through

carriage, though the freight was carried a part of the distance by connecting lines.

4. ———: **Exemptions from Common Law Liability: Considera-tion.** A contract of carriage exempting a carrier from its com-mon law liability for loss as insurer of freight, is valid if a con-sideration is allowed the shipper for the exemption, otherwise it is invalid.

5. ———: ———: **Termination of Liability.** Although a bill of lading provided that the carrier should not be liable for loss after the arrival of the freight at destination, unless that pro-viso was supported by a consideration, the liability of the car-rier did not cease on the arrival of the property at destination, nor until the consignee had a reasonable time after its arrival to remove it.

6. ———: ———: ———: **Reasonable Time.** Where a carload of freight arrived at six o'clock in the evening after dark and was destroyed by fire eight hours later, it could not be said that it was a reasonable time for the consignee to remove the freight prior to the fire, so that the carrier was liable for its destruc-tion.

7. ———: ———: ———: **Notice.** In such case where the bill of lading provided that notice should be given of the arrival of the freight and where it did not arrive in time, notice to the con-signee or his agent was necessary before the carrier could be relieved of liability to the shipper.

8. ———: **Liability for Loss: Notice of Claim.** Where a bill of lading provided that the carrier should not be liable for the loss of or damage to the freight for which it was given, unless notice of claim for such loss or damage should be presented to the carrier within thirty-six hours after the consignee had been notified of the arrival of the freight at destination, this would not prevent a recovery for the loss of the freight without such notice of demand within thirty-six hours, where there was evi-dence to show that no notice of the arrival was given and where the agent of the carrier knew of the loss and notice would have done no good.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

127 App—**6**

*James F. Green* and *Ernest A. Green* for appellant; *Martin L. Clardy* of counsel.

(1) The defendant is not liable in this case because the loss was caused by fire, for which the bill of lading expressly provided that the defendant should not be liable. No negligence of defendant caused the fire or contributed to it. Standard Milling Co. v. Transit Co., 122 Mo. 258; Gashweiler v. Railroad, 83 Mo. 112; Davis v. Railroad, 89 Mo. 340; Witting v. Railroad, 101 Mo. 631; Otis Co. v. Railroad, 112 Mo. 622. (2) Nor can defendant be held liable, because the bill of lading expressly stipulated that for any loss or damage occurring in the transit of the property the legal remedy, if any, should be against the particular carrier in whose custody the said property might actually be at the time of the happening thereof. Defendant was not liable beyond its own line. Dimmitt v. Railway, 103 Mo. 433; Reed v. Railroad, 60 Mo. 199; Grain & Elevator Co. v. Railroad, 138 Mo. 658; Nines v. Railroad, 107 Mo. 475; Hance v. Railroad, 56 Mo. App. 476; Nenno v. Railroad, 105 Mo. App. 540; Eckles v. Railroad, 112 Mo. App. 240. (3) The consignee did not make claim for damages in accordance with the terms of the bill of lading, and such failure relieved defendant of any liability. Bank v. Railroad, 119 Mo. App. 14; Bellows v. Railroad, 118 Mo. App. 500; Harned v. Railroad, 51 Mo. App. 482; Dyas v. Hanson, 14 Mo. App. 363; Dawson v. Railroad, 76 Mo. 514; Ward v. Railroad, 158 Mo. 236; Leonard v. Railroad, 54 Mo. App. 293; Rice v. Railroad, 63 Mo. 314; Darlington v. Railroad, 99 Mo. App. 1; Freeman & Hinsen v. Railroad, 118 Mo. App. 526; Smith v. Railroad, 112 Mo. App. 610. (4) The bill of lading expressly provided that the liability of defendant as a common carrier terminated upon the arrival of the property at the place of delivery. There was no negligence on the part of defendant and hence no liability on its part. Grier v. Railroad, 108 Mo. App. 565; Freeman &

Hinsen v. Railroad, 118 Mo. App. 526; Ratliff Bros. v. Railroad, 118 Mo. App. 656. `

*W. C. Russell* for respondent.

(1) The bill of lading offered in evidence, according to all the authorities, is a contract to carry the flour from Sikeston, Missouri, to Yazoo City, Mississippi. Marshall v. Railroad, 74 Mo. App. 81; Marshall and Michel G. Co. v. Railroad, 176 Mo. 480; Western S. & D. Co. v. Railroad, 177 Mo. 641; Powder Co. v. Railroad, 101 Mo. App. 442. (2) The contract being one for a through shipment the initial carrier's responsibility continued until the goods arrived at the place of delivery. McCann v. Eddy, 133 Mo. 59; Powder Co. v. Railroad, 101 Mo. App. 442; Pindell v. Railroad, 34 Mo. App. 685; Pindell v. Railroad, 41 Mo. App. 84; Rankin v. Railroad, 55 Mo. 171. (3) The liability of the defendant in this case was that of an insurer of the freight committed to its care and custody and it could not exempt itself from liability as such except by special agreement understandingly made, and based on an adequate consideration. The testimony shows that the flour was billed at the regular tariff rate, and the bill of lading shows that six cents per hundred-weight was paid in and the testimony of L. R. Bowman shows that this was paid by surrendering an expense bill which the milling company held against the railroad company. So, there being no consideration for the clause in the bill of lading exempting the railroad company from liability, the milling company had the right to treat them as nullities and hold the defendant as an insurer. Kellerman v. Railroad, 136 Mo. 177; Richardson v. Railroad, 149 Mo. 311.

GOODE, J.—This action was brought to recover the value of a carload of flour shipped by the respondent, or its predecessor, the Bowman Mathews Milling Com-

pany, from Sikeston, Missouri, to Yazoo City, Mississippi, and destroyed by fire at the latter point while still in the custody of the appellant as a common carrier, it is alleged. Respondent, the Scott County Milling Company, a corporation, was formed May 20, 1904, by the consolidation of two other milling companies, the Greer-Ebert and the Bowman-Mathews. The flour was delivered to the appellant by the Bowman-Mathews Milling Company on January 12, 1904, for transportation to Yazoo City, consigned to the order of the shipper, with a direction to appellant to notify the W. R. Hyatt Company, at Yazoo. A draft was drawn by the shipping company on the company to be notified, attached to the bill of lading and sent for collection to a bank at Yazoo. On payment of the draft the Hyatt Company would become entitled to the flour. The bill of lading was issued by appellant to the Bowman-Mathews Milling Company and will be copied, omitting portions not material to this controversy.

"THE MISSOURI PACIFIC RAILWAY COMPANY Leased, Operated and Independent Lines. ————

Division of ———— Railway,

"Jan. 12, 1904.

"Received from Bowman-Mathews Milling Co., the following property, in apparent good order, marked and numbered as per margin, to be transported from ———— —— to ———— ---- and delivered to the consignee, or a connecting common carrier. The property aforesaid may pass through the custody of several carriers before reaching its destination, and it is understood as a part of the consideration for which the said property is received, that the exceptions from liability made by such carriers respectively shall operate in the carriage by them respectively of such property, as though herein inserted at length; and especially that neither of said carriers, or either or any of them, or this company, shall be liable for losses, etc.  .  .  .  .

Milling Co. v. Railroad.

"And it is further especially understood, that for all loss or damage occurring in the transit of said property, the legal remedy shall be against the particular carrier only in whose custody the said property may actually be at the time of the happening thereof—it being understood that

THE MISSOURI PACIFIC RAILWAY COMPANY
Leased, Operated and Independent Lines,
in receiving the said property to be forwarded as aforesaid, assumes no other responsibility for its safety or safe carriage than may be incurred on its own road. . . .

"Claims for damages must be reported by consignee in writing, to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not then given, neither this company, nor any of the connecting or intermediate carriers shall be liable. In the event of the loss of property under the provisions of this agreement, the value, or cost of the same at the point of shipment shall govern the settlement.

"*Notice.* The responsibility of this company as a common carrier terminates upon arrival of the property at station or place of delivery. Free storage will be given for forty-eight hours thereafter (exclusive of Sundays and legal holidays) at the risk of the owner; if not removed at the expiration of that time the property will, at the option of the carrier, either be removed and stored in a public warehouse, at owner's cost and risk, or will be retained in the carrier's possession, as warehouseman, subject to warehouse charges. . . .

"*Notice.* In Accepting This Contract the shipper or other agent of the owner of the property carried, expressly accepts and agrees to all its stipulations and conditions.

"Consigned to Sh-O Ntfy W. R. Hyatt Co.
"At Yazoo City, Miss.

Milling Co. v. Railroad.

"Weight and classification subject to correction.

| Marked | List of Articles | Weight |
|---|---|---|
| Mo P | 150 Brls Flawless Flour | 30,000 |
| 21359 | 100½ Brls Flawless Flour | 10,000 |
| | | 40,000 |

"E. St. L. paid in 6c per cwt.    T. E. Dover, Agt.
Endorsed: Bowman-Mathews Milling Co. Per. L. B.
BOWMAN."

Appellant's line ran no further than Memphis, to which point it carried the flour and there delivered it to the Mississippi River & Yazoo Valley R. R. Company, a branch line of the Illinois Central Railway Company, to be carried to destination; which was done. The time consumed in transit from Sikeston to Yazoo City was longer than usual. The car arrived at the latter point at 9:10 a. m., January 21, 1904, and was placed on what is known as the "House Track," "before 6 p. m. of January 22, 1904," the agent of the Yazoo Company swore. He also swore notice was given on January 22d to the W. R. Hyatt Company that the car had arrived and was ready for delivery. It was set on the house track in order that it might be unloaded into the Hyatt Company's warehouse, but the railway company's agent could not tell when it was set there more definitely than as just stated. The warehouse was consumed by fire about two o'clock a. m. January 23; that is about eight hours after the latest moment at which the car may have been placed on the house track for unloading. The flames spread from the warehouse to the car and destroyed the flour. It should be stated that the bill of lading did not mention the rate to be charged, nor was any rate agreed to verbally; but the testimony for plaintiff was that the rate charged was the usual one from Sikeston to Yazoo City. It was not paid in cash but, it seems, by the settlement of some outstanding account between the Bowman-Mathews Company, the shipper and the de-

fendant company, the witness said, by "the surrender of an independent St. Louis expense bill"—saying also: "We shipped at the regular tariff rate." For the defendant the testimony was that no through rate from Sikeston to Yazoo City was published by it. This action was brought by respondent, as successor of the Bowman-Mathews Company, for the value of the flour. The answer, in addition to a general denial, pleaded provisos in the bill of lading, as follows: that neither appellant nor any connecting carrier which might have the property in custody while in transit, should be liable for its loss by fire; that the appellant assumed no responsibility for the safety of the property save while on its own road; that all claims for damages should be reported by the consignee in writing to the delivering line within thirty-six hours of the arrival of the freight at the place of delivery, or in default of such notice, neither the appellant nor any other carrier, should be liable; that the liability of the appellant as a common carrier should terminate at the place of delivery and, thereafter, free storage should be given for forty-eight hours. Appellant avers it carried the property safely over its own line and delivered it to the Illinois Central Railway Company to be further carried; which was done, and said Illinois Central Railway Company, or one of its connecting carriers, transported the property to Yazoo City, the point of destination; that it was not taken into possession by the consignee and the car containing the property was, without fault or negligence of appellant, or any other carrier, destroyed by fire January 23, 1904; that the consignee was duly notified of the time of the arrival of the flour at Yazoo City, but at no time within thirty-six hours of its arrival was appellant, or any connecting carrier, notified of any claim for loss or damage to it. The replication admitted the contract of shipment contained in the several provisos set out in the answer, but averred they were unreasonable, in viola-

tion of law, without consideration, and not binding on the Bowman-Mathews Milling Company or respondent. It admitted further that the consignee never took possession of the flour after its arrival at Yazoo City and that it was destroyed by fire while in the possession of the final carrier. Every other allegation of the answer was denied. At the conclusion of the evidence the court refused to direct a verdict for appellant; and instructed the jury, in substance, that the bill of lading was a contract by appellant to carry the flour from Sikeston to Yazoo City, appellant's responsibility as a common carrier beginning with the issuance of the bill of lading and continuing until the flour arrived at destination and the W. R. Hyatt Company was notified of its arrival; that appellant could not exempt itself from liability for loss of the flour by fire, except by a special agreement, based on an adequate consideration; that if the jury believed the flour was received by appellant and the regular tariff paid or agreed to be paid by the Bowman-Mathews Company and charged by appellant for carrying the shipment to Yazoo City, and appellant carried the flour over its own line to Memphis and there delivered the same to another carrier, and on its arrival at Yazoo City said other carrier failed to notify the W. R. Hyatt Company of its arrival and said car was destroyed by fire while on the track where placed by the Yazoo Railroad Company, the jury should find the issues for the respondent and assess its damages at such sum as the flour was reasonably worth at Sikeston when shipped. The court further instructed the jury that if they believed the Yazoo Railroad Company did not notify the W. R. Hyatt Company of the arrival of the car at Yazoo City, then the failure of the W. R. Hyatt Company to notify appellant of damage to said car would not prevent respondent from recovering. Appellant requested an instruction advising the jury that if they found appellant delivered the carload of flour to a con-

necting carrier to be transported to Yazoo City, which was done, and the car was placed on a side track near the warehouse of the Hyatt Company, and there destroyed by fire, appellant was not liable and a verdict must be returned in his favor. Further, that if the jury believed the car of flour, after it had been placed on the side track near the warehouse of the Hyatt Company, was destroyed by fire, and that respondent did not make demand in writing of appellant on account of the loss within thirty-six hours of the occurrence of the loss, the verdict must be for appellant. Those two requests were refused. The jury returned a verdict in respondent's favor for $985, and judgment having been entered thereon, appellant, after appropriate motions, appealed to this court.

Respondent's cause is not helped by section 5222 of the statutes (Revision of 1899) which says that whenever property is received by a common carrier to be transferred from one place to another, or when a railroad or transportation company issues a receipt or bill of lading in this state, such carrier shall be liable for loss of or damage to the property caused by its own negligence or that of any other carrier to which the property shall be delivered, or over whose line it may pass. The appellant company received the flour for shipment and issued a bill of lading for it in this state; but it was not lost by the negligence of defendant or a succeeding carrier. Appellant is not liable for the loss unless it contracted to transport the flour to destination, and on this point the decision in Phoenix Powder Mfg. Co. v. Railroad, 101 Mo. App. 442, 74 S. W. 492, is inapplicable, for in that case the railroad company conceded the contract was for through carriage and relied on a term of the bill of lading excepting it from liability for a loss by fire. The question for decision was, therefore, the validity of said exception. In the present case the appellant company insists it did not agree to carry to destin-

ation, but to the end of its line. The bill of lading, or if it is uncertain, the facts connected with the issuing of it, must be looked to in determining this question. Said document contains no definite statement about the matter but is ambiguous, and having been prepared by the company's agent, ought to be construed most strongly against the company in so far as its meaning is doubtful. [Stannard Milling Co. v. Transit Co., 122 Mo. 258, 26 S. W. 704.] It recites neither the point where the flour was received, nor the destination; nor does it say appellant agreed to carry only to Memphis, the end of its own line, though it undertook to restrict appellant's liability as a common carrier by providing that it should be liable only for losses occurring while the property was in its actual custody and on its own road. These provisos are somewhat inconsistent with this one: "The responsibility of this (i. e., appellant) company as a common carrier terminates on arrival of the property at the station or place of delivery." The latter clause plainly imports that appellant assumed full liability to destination; and on consideration of the entire contract and the decisions in similar cases given by the appellate courts of this State, we have no doubt the contract was one for through carriage. There is testimony that a lump charge for freight over the entire distance was collected, and the bill of lading said the property was consigned to the shipper with a direction to notify the W. R. Hyatt Company at Yazoo City. The bill of lading is substantially like the one construed to create a through contract in Marshall, etc., Co. v. Railroad Company, 176 Mo. 480, 489, 75 S. W. 638, wherein, as in the present instance, the place of destination was left blank and the destination shown by an endorsement at the end of the bill. In the case cited the court said that as the defendant had issued a bill of lading for the corn to a point beyond its own line, it had agreed, prima facie, to carry the corn to destination, not to the end of its road.

The bill of lading issued for the flour in question nowhere states explicitly, or even inferentially, that appellant agreed to carry only to its terminus at Memphis. The wording of the bill, taken in connection with the collection of freight for the entire distance, makes it plain the shipper and the company both understood the agreement to be for carriage by the latter to destination. When such a contract is made by the initial carrier, all intermediate and connecting carriers are regarded as its agents to assist in transporting the property. [1 Hutchinson, Carriers (3 Ed.), sec. 240.] Hence we hold appellant's responsibility for the safe transportation of the property to Yazoo City and its delivery there in accordance with the direction contained in the bill of lading, was to be measured, in general, by the rules of the common law, and appellant is liable for its loss unless the exception to the common law liability provided for in the event of its destruction by fire, was valid. It was valid if a consideration was allowed the shipper for the exception; otherwise it was invalid. [1 Hutchinson, sec. 475; McFadden v. Railroad, 92 Mo. 343, 349, 4 S. W. 689.] There was testimony that the regular tariff rate for the carriage of freight was charged and the question of whether or not it was, the court submitted to the jury, though we find no evidence that the rate charged was a reduced one. That any other consideration for the exception was paid or allowed the shipping company is not asserted.

But it is insisted that even if appellant was a through carrier, the contract contained a proviso that its common law liability as such ceased on the arrival of the property at the station or place of delivery; whereupon if the property remained in its custody, it was responsible to the extent of being bound to use ordinary care to preserve the flour and as there was no proof that its destruction was due to appellants' negligence, and, indeed, conclusive proof the other way, appellant is not

answerable for the loss. This defense stands on the same footing as the previous one. The legal liability of a common carrier in the absence of a special arrangement, does not terminate with the arrival of the property at destination, and the proviso in question was but another effort by appellant to restrict its liability. It could not do this except by an agreement based on a valid consideration. A carrier ceases to be liable as such and becomes liable for ordinary care, not on the arrival of the property at destination, but after a reasonable time for its removal by the consignee. [2 Hutchinson, Carriers (3 Ed.), sec. 714; Bell v. Railroad, 6 Mo. App. 363.] According to the testimony for the railroad company this property was not set out for removal from the car, that is, for delivery to the Hyatt Company, until six o'clock p. m., January 22d; at least the agent was unwilling to swear it was set out earlier. We cannot say that in the winter season the consignee had a reasonable time, after the car was placed for delivery, to remove the flour from it prior to the hour it was burned, even had the Hyatt Company been notified it was ready for delivery. By six o'clock in the evening it was dark and within eight hours later the flour had been consumed. But notice of the arrival was necessary, both because the bill of lading so declared, and because the flour did not arrive on time. The officers of the Hyatt Company gave testimony tending to show they were not notified. In the instructions the court required the jury to find no notice had been given, as one prerequisite to a verdict for defendant. This defense was presented to the jury in a form affording appellant no just cause to complain.

Appellant's counsel contend the court erred in refusing to instruct the jury that the failure of respondent to give notice of a claim for damages within thirty-six hours after the car was destroyed by fire, precluded a recovery. The bill of lading required notice to be given

within thirty-six hours after the consignee (i. e. the Bowman-Mathews Co.) had been informed of the arrival of the freight at destination.  If we allow that said proviso would have been performed by apprising the Hyatt Company, we are confronted by evidence tending to prove that neither said company nor the consignee was informed of the arrival of the flour—evidence of which the refused instructions took no account, but peremptorily declared that if respondent (Scott Milling Co.), did not make a demand within thirty-six hours, not of the arrival of the flour, but of its destruction, the verdict must be for the appellant.  Moreover the agreement provided for notice to the delivering line (the Yazoo Company) of a claim for damages; whereas the instructions directed a verdict for appellant if the notice was not made in writing by the Scott Milling Company to appellant.  The requested instruction failed to follow the bill of lading in important particulars and was properly refused. · But appellant also requested an instruction for a verdict in its favor, which may be said to cover the failure to give notice to the delivering line within thirty-six hours after notice to the consignee of the arrival of the car at the place of delivery.  This peremptory instruction could not have been granted on the score of failure to give notice in writing of a claim for damages, for the reason that the evidence was contradictory as to whether the carriers had complied on their part with the precedent condition of giving notice to the Hyatt Company of the arrival of the car.  Aside from these considerations we may say that the agent of the delivering line knew all about the destruction of the flour immediately; and it is difficult to see how appellant could have derived any benefit from a notice of a claim for damages, either in defense or preventing the damages from being magnified.  When notice would have done no good, failure to give it does not prevent a recovery. [Ward v. Railroad, 158 Mo. 226, 237, 58 S. W. 28; Free-

man v. Railroad, 118 Mo. App. 526, 93 S. W. 302; Hardin v. Railroad, 96 S. W. 681.]

The judgment is affirmed. All concur.