SIMMONS HARDWARE COMPANY, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, June 8, 1909.

1. COMMON CARRIERS: Common Law Liability: Through Carriage: Exemption from Liability. In a contract for through carriage of freight, where no reduced freight charge or other consideration is shown, a proviso exempting the initial carrier from liability for loss or damage to property beyond its own line would be inoperative, as unsupported by a consideration, and the carrier would be answerable for any such loss or damage, whether it occurred on its own line or on the line of a connecting carrier, unless it was due to the act of God or a public enemy.

2. ————: Bill of Lading: Effect of Receipt Referring to Bill of Lading. A receipt by a carrier for freight received for transportation, which declares that the shipment shall be subject to the conditions of the bill of lading, makes the bill of lading a part of the contract of carriage.

Hardware Co. v. Railroad.

3. ————: **Carrier's Receipt: Express Contract: Question for Jury.** A receipt or "dray ticket" issued by a carrier, which says nothing in express terms about the transportation of property, but the language of which suggests that property was to be transported to a certain place, and from there to another place in care of a steamboat company, is not an express agreement to carry the property, yet, under these facts, it is open to the trier of the facts to find there was a contract for transporation.

4. ————: **Agency: Contracts: Construction of Contract Made by Shipper's Agent.** Where certain words in a receipt issued by a carrier were added by the agent of the shipper any ambiguity therein is to be resolved against the latter.

5. ————: **Contracts to Carry Beyond End of Line: Contracts to Carry to End of Line only.** A common carrier is not bound to contract to carry beyond its own line; but if, in the main clause of the contract, it undertakes to carry to destination it cannot limit its statutory liability by exceptions set out in subsequent clauses. If, however, it specially contracts in the main clause to carry to the end of its line only, its liability will extend no further.

6. ————: ————: **Limitation on Common Law Liability.** An initial carrier cannot limit its statutory liability, when it agrees to carry through, but it may limit its common law liability for a consideration.

7. ————: **Contract that Carrier Should be Liable for Loss on Own Line only.** A receipt by an initial carrier of freight recited that the goods were received in good order for the consignee, subject to bill of lading, and provided that the property received on the dray ticket was subject to the conditions of the bill of lading. The bill of lading in the main clause contracted for the carriage of the freight and delivery to a connecting carrier, if destination was not on its line, and limited liability for loss to that occurring on its own line. *Held*, that the receipt and bill of lading did not establish a contract for through carriage, and the initial carrier was liable only for loss on its own line.

8. ————: **Agency: Connecting Carriers: Through Freight Charges.** Where a carrier receives property to be transported to a certain destination over its own route and the routes of connecting carriers, for a round freight charge, the other carriers will be treated, in the absence of proof to the contrary, as transportation agencies of the first carrier, especially where there is a traffic arrangement between such carriers.

Hardware Co. v. Railroad.

9. ————: ————: ————: Collecting Freight Charges. Where an initial carrier was authorized to collect freight for a connecting carrier, but the former had no interest in or connection with the latter, except to receive and pay over to it the freight charges, the latter cannot be regarded as the agent of the former so as to make it liable for any loss occurring on the line of the latter.

Appeal from St. Louis City Circuit Court.—*Hon. C. C. Allen,* Judge.

AFFIRMED.

*C. R. Skinker* for appellant.

(1)    The contract between respondent was for through carriage from St. Louis, Missouri, to Homestead Landing, Louisiana. Popham v. Barnard, 77 Mo. App. 629; Door Co. v. Railroad, 177 Mo. 655; Railroad v. Trading Co., 195 U. S. 439; Smeltzer v. Railway, 158 Fed. 649; White v. Railway, 19 Mo. App. 400; Johnson v. Railroad, 133 Mich. 596; Jennings v. Grand Trunk, 127 N. Y. 438, 442; Fruit Company v. Railroad, 118 Cal. 648. The boat was the agent of respondent, not appellant, to complete the carriage. Railroad v. Railroad, 110 U. S. 688; Helliday v. Railway, 74 Mo. 159; Meyers v. Railroad, 120 Mo. App. 294. Respondent had no authority to constitute the boat the agent of appellant. Bank v. Express Co., 93 U. S. 174. (2) The liability for loss occurring beyond respondent's line falls on respondent in case of a contract for through carriage, as here. R. S. 1899, sec. 5222; McCann v. Eddy, 133 Mo. 59, 174 U. S. 580; Marshall Co. v. Railroad, 176, 480; Door Co. v. Railroad, 177 Mo. 641; Eckles v. Railroad, 112 Mo. App. 240; Hubbard v. Railroad, 112 Mo. App. 459; Bushnell v. Railroad, 118 Mo. App. 624; Buffington v. Railroad, 120 Mo. App. 294; Davis v. Railroad, 122 Mo. App. 644; Medicine Co. v. Railroad, 126 Mo. App. 455; Milling Co. v. Railroad, 127 Mo. App. 80. (3) The reference in the original ship-

ping receipt to the company's bill of lading does
not confine respondent's liability to its own lines,
because: (a) Section 5222, Revised Statutes 1899,
forbids the incorporation of that bill of lading
into the original shipping receipt. Door Co. v. Rail-
road, 177 Mo. 654; Smeltzer v. Railway, 158 Fed.
649. (b) If the contract be ambiguous as to
whether it imports a contract for through carriage, it
must be resolved against the carrier. Richardson v.
Railroad, 149 Mo. 311; Milling Co. v. Railroad, 127 Mo.
App. 90; Railway v. Reiss, 183 U. S. 626. (c) If there
is any conflict between the written shipping directions
in the receipt, and the printed provisions in the bill of
lading, the latter must give way. (4) Delivery at Up-
per Wilton was no delivery within the contract. 4
Elliott on Railroads, par. 1526; Railroad v. Potts, 33
Ind. App. 574. (5) There should be judgment in this
court for the value of the shipment, plus freight paid,
and interest at six per cent from date of demand on the
aggregate thereof. R. S. 1899, sec. 866.

*Martin L. Clardy* and *Henry G. Herbel,* for re-
spondent, filed argument.          .

GOODE, J.—This case has been submitted on an
agreed statement of the facts, all of which need not be
transcribed to render our decision clear, and the
statement will be presented in an abridged form.
Plaintiff is a corporation engaged, among other things,
in selling saddlery and harness in the city of St. Louis,
defendant is a railway company and a common carrier,
with a line extending from said city southward to Vi-
dalia on the west bank of the Mississippi river in the
State of Louisiana, and E. W. Constant & Son are
merchants doing business in Atherton, an inland town
in Louisiana, a few miles from Homestead Landing.
The latter point is on the west bank of the Mississippi
river where freight intended for Atherton is taken

aboard and discharged by steamboats.    Homestead
Landing is many miles north of Vidalia, the nearest
point to defendant's railroad.    On February 19, 1903,
plaintiff delivered to defendant company in St. Louis,
harness, whips and saddlery of the market value of $64
for transportation and delivery according to this in-
strument.

"Order No. 210-0513 Special Instructions I. M. S.
                                         St. Louis, 2-19-03.

"Received from Simmons Hardware Company, Inc.
in good order for E. W. Constant & Son, Atherton, La.,
To Vidalia c-o Boat to Homestead Ldg.    Subject to
Railroad Company's bill of lading.

"At Owner's Risk if Lower Classification.

| Rates | No. Pkgs. | Wagon No. | Weight |
|---|---|---|---|
| | 2 | Box Saddlery | 140 |
| | 1 | Box Harness | 40 |
| | 1 | Box board whips | 15 |
| | | | 195 |

"St. L., I. M. & S. Ry. Co.    Cupples Station, 2-19-03.

"The above property received on this Dray Ticket
is subject to conditions of Company's Bill of Lading.
T. P. Adams, Agent, per Coffin.    Prepay freight."

No bill of lading was issued pursuant to the receipt
supra, but it is agreed the form of bills of lading in reg-
ular use by defendant company at the time was, as far
as its provisions are material to the present case, as
follows:

"St. Louis, Iron Mountain & Southern Railway Co.
Rates Guaranteed.                St. Louis...... 190..
To ............... Received from ...............
Charges advanced ..............................

Hardware Co. v. Railroad.

If 1st class..cts per 100 lbs. the following packages, contents unknown, in apparent good order, marked and numbered as per margin, to be transported from St. Louis to destination, if on this railway or its leased and oper-

If 2nd class..cts per 100 lbs.

If 3d class..cts per 100 lbs.

If 4th class..cts per 100 lbs.

If 5th class..cts per 100 lbs.

Cotton .. ....cts per 100 lbs.

...... .. ....cts per 100 lbs.

.... .... ....cts per 100 lbs.

Flour and meal ......per bbl.

Beef, pork and fish....per bbl.

Special .... .... ....per bbl.

ated lines, or to the proper junction, if the destination is on another road; and delivered to the consignee, or a connecting carrier. The package aforesaid may pass through the custody of several carriers before reaching their destination, and it is understood as a part of the consideration for which the said packages are received, that the exceptions from liability made by such carriers respectively of said packages, as though herein inserted at length; * * * it is further especially understood that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the St. Louis, Iron Mountain & Southern Railway in receiving these said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Note. In accepting this contract the shipper or other agent of the owner of the property carried, expressly accepts and agrees to all its stipulations and conditions. Consigned to ........ at ........ weight and classification subject to correction.

Marked                 List of articles.                 Weight."

Defendant's tariff schedule, on file with the Interstate Commerce Commission when the shipment occurred, prescribed a charge of $1.20 for carrying the articles by rail from St. Louis to Vidalia and thence by boat to Homestead Landing. That charge was prepaid by plaintiff when it delivered the goods to defendant. Steamboats ply on the Mississippi from Vidalia to towns along the river, among which are Homestead Landing and Upper Wilton Landing, and the articles in controversy were delivered by defendant in the same condition they were received by it to one of the steamboats of the line. The steamboat transported them from Vidalia to Upper Wilton Landing, and on April 27, 1903, delivered them at that point, instead of at Homestead Landing. To whom the delivery was made is not stated, but they never were received by the consignees, E. W. Constant & Son. Plaintiff thereafter demanded from defendant payment of the value of the articles lost and was refused. We transcribe a stipulation from the agreed statement of facts with reference to the relation between defendant and the steamboat company which received the articles from defendant in Vidalia for carriage to Homestead Landing: "Defendant had no interest in or connection with said steamboat line, except to collect and pay over to it its freight charges from Homestead to Vidalia, which it did in this instance."

The gravamen of the petition in the present case is the delivery of the goods by plaintiff to defendant in St. Louis, to be transported from St. Louis to Vidalia by rail, thence by boat to Homestead Landing and there delivered to E. W. Constant & Son of Atherton for a certain reward, and the non-delivery of the goods. The petition counts on the common law liability of the defendant and sounds in trover for conversion of the goods. We need not recite the declarations of law requested by plaintiff and refused, for at defendant's request the court declared the law to be against plain-

tiff's right to recover and that the verdict must be for defendant. Judgment having been entered accordingly this appeal was taken.

1. Counsel for plaintiff insists the contract between his client and defendant was one for through carriage of the goods from St. Louis to Homestead Landing. If this was true, as the agreed facts show no reduced freight charge or other consideration for a limitation of defendant's common law liability, it would be answerable to plaintiff for the loss of the property anywhere on the route, and whether the loss occurred while it was in defendant's custody or the steamboat company's; that is to say, unless it was due to the act of God or the public enemy. [Scott Co. Mill. Co. v. Railroad, 127 Mo. App. 80.] The proviso against defendant being liable for loss or damage occurring elsewhere than on its own line, would be inoperative as unsupported by a consideration. Counsel for plaintiff argues that defendant's bill of lading cannot be considered as part of the contract, but the latter must stand on the receipt issued by defendant and designated as "Exhibit A." This position is untenable, because the receipt declared the shipment should be subject to the conditions of the defendant's bill of lading, thereby making the latter a part of the contract. [Western Sash & Door Co. v. Railroad, 177 Mo. 641.] There can be no doubt about the terms of the bill of lading, as the parties have attached to their agreed statement of the facts a blank form as the one in use. The question then is, whether the receipt or "dray ticket," coupled with the bill of lading, made a contract for through carriage or for carriage only to the end of defendant's line at Vidalia. It will be observed the document, which calls itself a "dray ticket," says nothing in express terms about the transportation of the property, though the language used suggests it was to be transported, as it is recited to have been received from plaintiff at St. Louis for E. W. Con-

stant & Son, Atherton, Louisiana. This suggestion
would arise, too, from the fact defendant is a railroad
company, and from the recital in the receipt that from
Vidalia the property was to be in the care of the boat
company to Homestead Landing. Still, the so-called
dray ticket is reticent about what was to be done with
the property and does not say defendant was to carry it
either to Vidalia or to Homestead Landing. The agreed
statement says the words "To Vidalia, c-o boat to Home-
stead Landing" were written by plaintiff's agent on the
blank form and, therefore, if they were ambiguous, it
was plaintiff's fault. So much for the receipt, which
was not, on its face, an express agreement by defendant
to transport the property at all; though we do not doubt
it was open to the court, as trier of the facts, to find
from the receipt and the agreed circumstances, there
was a contract for transportation. Taking up the bill
of lading we find in the very clause containing the con-
tract of carriage between the shipper and the company,
a stipulation that the goods were received "to be trans-
ported from St. Louis to destination, if on this railway
or its leased and operated lines, or to the proper junc-
tion, if the destination is on another road; and delivered
to the consignee, or a connecting carrier." We point out
the place in the bill of lading where the stipulation
limiting the carriage by defendant to its own or leased
and operated lines, occurs, and that it is in the main
clause, on which the shipper's attention would be most
likely to fall. This circumstance is treated in the de-
cisions as important, if not controlling, upon the ques-
tion of whether an attempt in a bill of lading to limit
the liability of the initial carrier is successful. [West-
ern Sash & Door Co. v. Railroad, 177 Mo. 641; Railroad
v. McCann, 174 U. S. 580.] Those cases dealt with the
statute making an initial carrier responsible for the
negligence of connecting lines (R. S. 1899, sec. 5222)
and determined what kind of contracts could and what
could not be treated as contracts for through carriage,

in striving to give full effect to the statute. We do not see how instruments of the same tenor can be construed as through contracts under the statute and as local contracts with respect to the common law liability of the initial carrier. It is a question of interpretation and the same rules must be applied in either event. Now the effect of the decisions on the statute has been to develop these rules: A common carrier receiving property for transportation over its own line and other lines, is not bound to contract to carry beyond the end of its line; but if, in the main clause of the contract it undertakes to carry to destination, it cannot limit its statutory liability by exceptions and provisos set out in subsequent clauses. On the other hand, if it specially contracts in the main clause to carry only to the end of its line, its liability will extend no further. Or, to state the rule in the language used by Mr. Justice White of the Supreme Court of the United States in Railroad v. McCann, 174 U. S. 580, in expounding the effect of the decisions of the Supreme Court of this State: "An examination, however, of the opinion of the Supreme Court of Missouri demonstrates that it is not justly susceptible of the construction thus placed upon it. Analyzing the opinion of the court, it results that the court decided that whilst the statute left a railway company ample power to restrict its liability by contract, both as to carriage and as to liability for negligence, to its own line, the purpose embodied in the statute was to regulate the form in which the contract should be expressed, so as to require the carrier to embody the limitation directly and in unambiguous terms in the portion of the agreement reciting the contract to transport, and not to import or imply such limitation by way of exception or statements of conditions and qualifications, requiring on the part of the shipper a critical comparison of clauses of the contract in order to reach a proper understanding of its meaning. That is to say, that the restraint imposed by the statute was not a curtailment of the power to limit

liability to the line of the carrier accepting the freight, but a regulation of the form in which the contract having that object in view should be drawn." Though the initial carrier cannot limit its statutory liability when it agrees to carry through, it may limit its common law liability for a consideration, and we are looking into the decisions on the statute only in order to ascertain what is a through contract. There was no restriction of defendant's common law obligation in the case at bar, because, as said, there was no consideration for such a restriction. The foregoing doctrine has resulted in some bills of lading being construed to be contracts by the initial carrier for through carriage, perhaps contrary to the plain intent of the instruments to be gathered from their four corners, simply because the purpose of the first carriers to agree to transport no further than to the end of their own lines was not explicitly stated in the part of the bills containing the contracts to transport. [Marshall, etc., Grain Co. v. Railroad, 176 Mo. 480; Western Sash & Door Co. v. Railroad, supra; Ingwerson v. Railroad, 116 Mo. App. 139; Scott Co. Mill Co. v. Railroad, 127 Mo. App. 80.] We cannot cite or review all the cases, but an examination of them will show the contracts passed on were in the form stated. In the case at bar, the contract of affreightment to be gleaned from the dray ticket and attached bill of lading, is much like the one held in Miller Grain Co. v. Railroad, 138 Mo. 658, to be an agreement by the first carrier to carry only to the end of its own line. It is true the receipt by a carrier of goods to be transported to a designated place, is prima facie an agreement to carry to destination, whether it be on or off the carrier's line; or so the courts in this State have held. [Popham v. Barnard, 77 Mo. 619, 628; Marshall, etc., Grain Co. v. Railroad, supra, loc. cit. 489.] But the terms of the main clause of the bill before us dispel this presumption.

Counsel for plaintiff insist the steamboat company which received the property to carry it from Vidalia to

Homestead Landing, must be regarded as the agent of plaintiff and not of defendant, inasmuch as defendant directed it to collect the freight for it. Authority can be found for the proposition that where a carrier receives property to be transported to a certain destination over its own route and the routes of connecting carriers, for a round freight charge, the other carriers will be treated, in the absence of proof to the contrary, as transportation agencies of the first carrier. [Smeltzer v. Railroad, 158 Fed. 649, 662; Railroad Co. v. Pratt, 122 Wall. 123; Bank of Ky. v. Adams Express Co., 93 U. S. 174; Nassua Lock Co. v. Railroad, 48 N. H. 339.] And especially will this rule be applied when a traffic arrangement is proved between the first carrier and the connecting ones for the transportation of freight over their lines. Those grounds of recovery must sink under the plaintiff in the present case, in view of the stipulation contained in the agreed statement of the facts, that defendant had no interest in or connection with the steamboat company except to collect and pay over to it the freight charge from Vidalia to Homestead Landing. This admission directly excluded the idea of a partnership, traffic association or any other arrangement than that defendant should collect the steamboat company's freight charges. But mere authority to collect a carrier's charge can not make said carrier the agent of the collecting one, or prove a joint traffic agreement existed between them.

The judgment is affirmed. All concur.